## 26766. DUDLEY v. THE STATE.

Argued October 13, 1971—Decided January 6, 1972—
Rehearing denied January 19, 1972.

*Byrd, Groover & Buford, Floyd M. Buford,* for appellant.

*Lewis R. Slaton, District Attorney, Carter Goode, John A. Nuckolls, Joel M. Feldman,* for appellee.

Mobley, Presiding Justice. Elmer H. Dudley was indicted on nine counts of credit card theft, and was convicted on all counts. The jury imposed sentences totaling 13 years in the penitentiary and a fine of $13,000, and the defendant was sentenced in accordance with the jury verdict. He made a

motion for new trial which was denied by the trial court. He appeals from his conviction and sentence and the denial of his motion for new trial.

The enumeration of errors asserts that the trial court erred in denying a motion to suppress evidence, on constitutional and other grounds; in failing to sustain the demurrer to the indictment; in rulings on the admissibility of evidence in the pre-sentence hearing; and in denying the motion for new trial.

■ The defendant demurred to the indictment on all counts on the ground that the allegations are insufficient to constitute a crime under any statute in force and effect in the State.

The defendant contends that the indictment was invalid because it failed to negate that the defendant had been entrusted with the credit cards. It is argued by counsel for the defendant that under *Code Ann.* § 26-1705.8 (Ga. L. 1969, pp. 128, 134) a person entrusted with a credit card for specifically authorized purposes, who uses it in an unauthorized manner, is guilty of a misdemeanor, and that the defendant in his statement asserted that the cards had been entrusted to him for a specific purpose.

The allegations of all counts of the indictment were the same except that the name of a different person owning a credit card, or a different credit card, was alleged. The counts charged the defendant and another with "credit card theft" in substantially the language of *Code Ann.* § 26-1705.2 (1, 2) (Ga. L. 1969, pp. 128, 130). The definition of the crimes with which the defendant was charged contains no exceptions in regard to entrustment, and no other exception, and the contention of the defendant that the indictment is invalid for failing to include any exception is without merit.

If the defendant was guilty of the misdemeanor of unauthorized use of a credit card as defined by *Code Ann.* § 26-1705.8, rather than the felony of credit card theft as defined by *Code Ann.* § 26-1705.2, this was a matter of defense.

■ The evidence relied on by the State to prove the possession by the defendant of credit cards of the persons named in the indictment was obtained by a search and seizure. The information leading to the obtaining of the search warrants was acquired through the interception and recording of telephone conversations between persons in Florida and persons in the office occupied by the defendant and his co-indictee.

The defendant filed a motion to suppress evidence obtained by the search and seizure, executed by agents of the Federal Bureau of Investigation, on warrants issued for the search of his person and the business premises of which he was an occupant.

Numerous questions are made as to the legality of the telephone interceptions, and the execution of the search warrants. Constitutional attacks are made on the Federal statute (18 USCA §§ 2510-2518) under which the telephone interceptions were made, and we deal first with these attacks.

The search warrants were obtained by F. B. I. Agent Edwin J. Sharp, and were issued by Frank A. Holden, Commissioner for the United States District Court for the Northern District of Georgia. The information furnished to the Commissioner included a synopsis of recordings of telephone conversations, relating to gambling activities, between Jesse and Martin Sklaroff, in the Miami International Airport, and persons in the building in Atlanta in which the defendant was an occupant.

In United States v. Sklaroff, 323 FSupp. 296 (1971), the United States District Court for the Southern District of Florida had for consideration the identical order involved here authorizing the interception of telephone conversations of Martin and Jesse Sklaroff. In the well-reasoned decision by District Judge Cabot it was held that Title III, Omnibus Crime Control and Safe Streets Act of 1968, P. L. 90-351, 82 Stat. 211-225, Chapter 119 of Title 18, United States Code (18 USCA §§ 2510-2518), was not subject to the attacks there made on it, under the Fourth and Fifth Amend-

ments to the United States Constitution. These attacks and the rulings made are summarized as follows:

(a) It was contended that any statute authorizing "wiretapping" is an unauthorized invasion of privacy, except possibly in situations involving the security of the country. The District Court held that the 1968 Federal statute had sufficient limitations on its use to come within the permissible invasion of privacy by electronic surveillance which former decisions of the United States Supreme Court had indicated would be allowed.

(b) It was contended that the electronic surveillance for a maximum period of 30 days, with the possibility of an extension of time, permitted by 18 USCA §§ 2510-2518, is in derogation of the criteria set forth in Berger v. New York, 388 U. S. 41 (87 SC 1873, 18 LE2d 1040), wherein the Supreme Court of the United States held that a New York statute authorizing electronic surveillance was unconstitutional. The District Court held that the 1968 Federal statute has remedies for the criticism made of the New York statute in the Berger case, by providing that the order for interception must provide that the authorization shall be executed as soon as practicable, be conducted so as to minimize interception of communications not otherwise subject to interception, and terminate upon attainment of the authorized objective; and by giving the issuing judge authority to control the duration of the interception.

(c) It was contended that the 1968 Federal statute offends the Fourth Amendment to the United States Constitution, prohibiting unreasonable searches and seizures, because it allows the seizure of testimonial evidence. The District Court held that the United States Supreme Court in recent cases, On Lee v. United States, 343 U. S. 747 (72 SC 967, 96 LE 1270); Lopez v. United States, 373 U. S. 427 (83 SC 1381, 10 LE2d 462); Hoffa v. United States, 385 U. S. 293 (87 SC 408, 17 LE2d 374), had held that such testimonial evidence may be seized.

(d) It was contended that the 1968 Federal statute violates the particularity requirements of the Fourth Amend-

ment because it allows the intercepting officers to listen to all conversations that fit the type specified in the order of authorization. It was held by the District Court that it was sufficient for the order to show a finding of probable cause that conversations will be overheard implicating the suspect in a specified pattern of criminal conduct, without describing the specific content of the anticipated conversations.

The constitutional attacks above referred to, made in the Sklaroff case, are made in the present case, and for the reasons given by the District Court Judge in the Sklaroff case, we hold that these attacks in the present case are without merit.

In addition to the attacks made on the 1968 Federal statute which were dealt with in the Sklaroff case, the defendant in the present case also attacks the statute on the ground that it violates the right to free speech guaranteed by the First Amendment to the United States Constitution.

In United States v. Escander, 319 FSupp. 295, 302 (1970), the United States District Court for the Southern District of Florida held that the Federal statute was not subject to the attack that it is an unconstitutional deprivation of the right of free speech as protected by the First Amendment for the following reasons: Fear of electronic surveillance is not a direct limitation of free speech; discriminating law enforcement surveillance under a statute replete with procedural safeguards is far different from indiscriminate law enforcement and private surveillance; it has long been recognized that some restriction on the right of free speech is necessary in community living.

We concur in these rulings by the District Court, and find no merit in the defendant's contention that the Federal statute (18 USCA §§ 2510-2518) violates the First Amendment to the United States Constitution.

■ Two questions are made in regard to the legality of the order authorizing interception of the telephone conversations which led to the procuring of the search warrant for the person and business premises of the defendant. The first is that the order was undated, and the second that the

type of conversation to be intercepted was not described with the necessary particularity to meet constitutional standards.

The order showed the date of "17" but did not show the month and year. The affidavit of F. B. I. Agent Edwin J. Sharp, made before United States Commissioner Swam, to obtain a search warrant for the persons of Martin and Jesse Sklaroff, and designated pay telephone booths at the Miami International Airport, states that an application was made on June 17, 1969, before Judge Mehrtens, for order to intercept telephone communications of Martin and Jesse Sklaroff from these telephone booths, and that pursuant to the attached order of Judge Mehrtens granting the applications, communications of Martin and Jesse Sklaroff were intercepted from June 19, 1969, to June 24, 1969, inclusive. The order authorizing the interception of telephone conversations was amended by Judge Mehrtens on September 2, 1969, nunc pro tunc to show the date of June 17, 1969. See United States v. Sklaroff, 323 FSupp. 296, 302, supra.

Accordingly, we hold that the search warrant was not illegal because the order authorizing the interception of telephone communications did not show the month and year.

■ The order authorizing interception of the telephone communications of Martin and Jesse Sklaroff made findings of fact that there was probable cause to believe that the Sklaroffs were committing an offense involving the transmission of wagering information over a wire communication facility, and the order authorized the interception of communications "which reveal the exact manner and extent to which Martin Sklaroff and Jesse Sklaroff receive and give out line information assisting in the placing of bets or wagers on a sporting event or contest, . . ."

It is contended by the defendant that the order was defective in that the type of conversation to be intercepted was not described with the necessary particularity to meet constitutional standards.

As pointed out in United States v. Sklaroff, 323 FSupp. 296, 307, supra, it "would be virtually impossible for the

applicant for the order to predict in advance the exact language of a conversation which has not yet occurred." The F. B. I. agents who were to execute the telephone interceptions, without doubt, understood the type of conversation which was referred to in the order, and it was not defective for failure to describe with more particularity the type of conversation to be intercepted.

■ It is asserted by the defendant that the search and seizure of items from his business premises was a general search prohibited by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

The list of items taken in the search and seizure shows 50 items. Substantially all of these items appear to pertain to the "bookmaking records and wagering paraphernalia" which the F. B. I. agents were authorized by the search warrant to seize. Counsel for the defendant point out that certain jugs and bottles containing liquid were seized, which had no connection with gambling activities.

During the hearing on the motion to suppress F. B. I. Agent Burgess testified that they took the liquid believing it to be narcotic cough syrup, which it proved to be. The other items listed in the inventory were such that the agents would have been authorized to conclude that they were used in gambling activities. The search and seizure was not such a general search as has been condemned as unconstitutional by the Supreme Court of the United States. Compare *DePalma v. State,* 228 Ga. 272 (185 SE2d 53).

■ The search warrants alleged that the evidence to be seized was "being used by persons who are engaged in the bookmaking business, who transmit bets and wagers and information assisting in the placing of bets and wagers in interstate commerce in violation of Section 1084 of Title 18, United States Code, who use facilities in interstate commerce to carry on a business enterprise involving gambling violations contrary to the statutes of the States of Georgia and Florida, in violation of Section 1952 of Title 18, United States Code, and who have conspired among themselves and

with others to violate Sections 1084 and 1952 in violation of Section 371 of Title 18, United States Code."

It is contended that the search warrants were void because 18 USC §§ 371 and 1952 can no longer be the basis of a criminal conviction. This contention is based on the ruling by the United States Supreme Court in Marchetti v. United States, 390 U. S. 39 (88 SC 697, 19 LE2d 889); and Grosso v. United States, 390 U. S. 62 (88 SC 709, 19 LE2d 906), that the Fifth Amendment privilege against self-incrimination barred prosecutions for violating the tax relating to wagers imposed by 26 USC § 4411. It is argued that the same ruling would apply to 18 USCA § 1952, which makes unlawful a gambling business carried on in interstate commerce if the excise tax has not been paid, and to 18 USCA § 371, dealing with conspiracies to defraud the government of revenue to which it is entitled, since the compliance with these revenue statutes would compel self-incrimination as to gambling activities.

Counsel for the defendant concede that two United States Court of Appeals cases have decided this issue contrary to their contention. Washington v. United States, 402 F2d 3; United States v. Tiktin, 427 F2d 1027. These cases held that the fact that accused persons may claim the privilege against self-incrimination in order to avoid convictions under a gambling tax statute does not make search warrants void which allege violations of the tax statutes.

The search warrants in the present case authorized the seizure of bookmaking records and wagering paraphernalia used by persons violating 18 USCA § 1084, as well as §§ 1952 and 371. Section 1084 deals with the transmission of wagering information by wire communication facility in interstate commerce, and it is not contended that this section cannot be enforced.

There is no merit in this attack on the search warrants.

■ The defendant contends that the search warrants were void because of an inadequate showing of probable cause.

F. B. I. Agent Donald P. Burgess applied to the Commissioner of the Northern District of Georgia for the issuance

of search warrants for the person and business premises of the defendant. Burgess attached an affidavit made by him and also an affidavit of Edwin J. Sharp, an F. B. I. agent stationed in Miami, Florida. The affidavit of Sharp had attached to it a synopsis of intercepted telephone calls between Martin and Jesse Sklaroff and persons at the telephone on the premises of the defendant where the search was to be instituted.

It is asserted by the defendant that the affidavit of Burgess, the only one appearing in person to obtain the search warrant, was based on the affidavit of another, and that probable cause was not shown in the affidavit of Burgess.

The information before the Commissioner covers many pages of the record. The investigation of the Sklaroffs had been the joint effort of a number of agents. The surveillance of agents in Atlanta furnished information which fitted in with information obtained by Agent Sharp in Miami. The hearsay information relied on by Agent Burgess was mainly from fellow officers engaged in the same investigation, and under such circumstances the hearsay information was sufficient evidence of probable cause for the issuance of the warrant. Jones v. United States, 362 U. S. 257 (80 SC 725, 4 LE2d 697, 78 ALR2d 233).

■ The jury was authorized to find the defendant guilty of the charges against him, and it was not error to deny the motion for new trial on the general grounds.

■ The defendant contends that the court erred in admitting evidence in the pre-sentence hearing that his general character and reputation were bad. This evidence was by Lieutenant Gable, in charge of the metropolitan lottery squad of the Atlanta Police Department.

The General Assembly, in 1970, revised the criminal procedure in this State by providing for a separate trial on the question of sentence after a jury has returned a verdict of guilty in a felony case. This statute provides as follows as to the evidence to be heard: "In such hearing, subject to the laws of evidence, the jury shall hear additional evidence in extenuation, mitigation and aggravation of punishment,

including the record of any prior criminal convictions and pleas of guilty or pleas of nolo contendere of the defendant, or the absence of any such prior criminal convictions and pleas: Provided, however, that only such evidence in aggravation as the State has made known to the defendant prior to his trial shall be admissible." *Code Ann.* § 27-2534 (Ga. L. 1970, pp. 949, 951).

"The general character of the parties, and especially their conduct in other transactions, are irrelevant matter, unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." *Code* § 38-202.

In a criminal trial the general character of the defendant is inadmissible unless he chooses to put his character in issue. *Bacon v. State,* 209 Ga. 261, 262 (71 SE2d 615).

The issue to be decided at the pre-sentence hearing calls for different evidence from that on the trial which determines guilt or innocence. On the issue of guilt or innocence the only relevant evidence is that pertaining to the particular offense with which the defendant is charged. In a pre-sentence hearing the jury must make a determination as to the sentence to be imposed, taking into consideration the past criminal record, or lack of criminal record, of the defendant, and his general moral character. See 21 AmJur2d 548, Criminal Law § 585.

The nature of the pre-sentence hearing involves the "general character" (*Code* § 38-202) of the defendant, and where the State has notified the defendant that such evidence will be admitted (*Code Ann.* § 27-2534), evidence of general bad character may be admitted.

The trial judge did not err in allowing the witness to testify that the character and reputation of the defendant were bad.

(a) At the pre-sentence hearing the State attempted to introduce an indictment and plea of guilty from a court of South Carolina. This document was not properly authenticated, and, on objection, the trial judge excluded it from the evidence. The defendant's counsel moved for a mistrial on

the ground that the offer of the evidence and the statement of the prosecuting officer in connection with it prejudiced the jury against the defendant. The trial judge instructed the jury not to give any consideration whatever to this evidence. It was not error to deny the motion for mistrial.

(b) The State introduced evidence in regard to lock picks seized on the business premises of the defendant. After rather extensive testimony on direct and cross examination, the defendant's counsel moved to exclude the evidence, and the trial judge excluded it, instructing the jury not to consider it. No further ruling was requested, and no error is shown.

*Judgment affirmed. All the Justices concur, except Nichols, Undercofler and Hawes, JJ., who dissent as to Division 9.*