### 30362. BROWN v. THE STATE.

NICHOLS, Chief Justice.

Paul Brown, Jr. and Joseph Batten were jointly indicted under a multiple count indictment for the murder and armed robbery of Charles B. Davis and for the armed robbery of Mrs. Charles B. Davis on December 14, 1973. Brown was tried separately in a trial which began on June 3, 1974. On June 5 the jury returned a death sentence on the murder charge and a life sentence, to run consecutively, on the count of the indictment charging armed robbery of Mr. and Mrs. Davis. The case is before this court on appeal and for mandatory review of the death sentence, which was imposed on the defendant Paul Brown, Jr.

On December 14, 1973, Mr. and Mrs. Davis and Mrs. Davis' sister were at the Davis Beer Store, which they operated in Jeff Davis County, Georgia, when a masked

gunman wearing a dark wide-brimmed hat entered the store, placed his gun against Mr. Davis' head and announced: "This is a hold-up." Shortly thereafter, he fired a shot and Mr. Davis fell to the floor. He then stuck the gun in front of Mrs. Davis' face and directed her to get the money. She gave him a money pouch containing $3,100 in cash and he then directed Mrs. Davis and her sister to lie flat on the floor and threatened to kill them if they moved. The two women remained on the floor for four or five minutes until a customer came in and found them.

An autopsy was performed on the body of Charles Davis which established that he had been shot in the left eye, causing brain hemorrhage and death. A .38 caliber bullet was removed from the victim's brain.

On January 10, 1974, Paul Brown, Jr. was arrested in connection with another offense, possession of a stolen shotgun; and as the arresting officer was checking appellant's automobile after the arrest, he found a pistol on the floorboard which was sent to the State Crime Laboratory for tests to determine if the bullet removed from Mr. Davis' body had been fired by such pistol.

At the trial Joseph Batten, Brown's co-indictee, testified that he drove Brown from McRae, Georgia to Jeff Davis County, on December 14, 1973, in his (Batten's) cousin's automobile at Brown's request to get "some dope." This witness further testified that when they had started back to McRae, and as they were passing the beer store, Brown said, "Let's knock off this place here," that he at first refused and then changed his mind and pulled over to the side of the road; that Brown put on a stocking-type mask and a floppy black hat, took his .38 pistol (which he had previously obtained from the witness) and went into the store; that soon after Brown went inside the witness heard a shot and a few minutes later Brown emerged from the store carrying a money pouch; that he got in the car and said to the witness "Come on, man, let's get away from here fast"; that Brown told him that he had shot the man and that upon their return to McRae, Brown gave him $1,100 from the money pouch.

Evidence was also adduced that the appellant stated to a member of the Georgia Bureau of Investigation that he, the co-indictee Batten, and another man planned and

carried out the armed robbery but in contradiction of the testimony of the co-indictee Batten, Brown contended that he was the driver and that one of the others went inside the store. A week later in another statement, Brown stated that he was the one who went inside the store and robbed and shot Mr. Davis, that his co-indictee Batten was the driver and that the two of them were the only ones involved and that no one else accompanied them.

Dr. Larry Howard, director of the State Crime Laboratory, testified that the firearm identification tests were made to determine if the bullet removed from the victim was fired from the pistol found in the defendant's automobile. This testimony was that while the bullet found in the victim was somewhat mutilated, some identifying marks remained visible to microscopic examination and while a positive match could not be made, there was a high probability that the death bullet was fired from a gun of the type found in the defendant's possession.

1. The first enumeration of error contends that the trial court erred in refusing to permit the cross examination of an agent of the Georgia Bureau of Investigation with reference to the appellant's co-operation during the investigation of the murder and armed robbery.

The scope of cross examination lies within the discretion of the trial court, and such discretion will not be disturbed unless it is shown that such discretion has been abused. In this case, where the matter sought to be elicited is repetitive in that it has already been established by prior cross examination of such witness, no abuse of discretion is disclosed by the record. *Crowder v. State,* 233 Ga. 789, 791 (213 SE2d 620) (1975); *Davis v. State,* 230 Ga. 902 (3) (199 SE2d 779) (1973); *Moore v. State,* 221 Ga. 636 (2) (146 SE2d 895) (1966); *Gravitt v. State,* 220 Ga. 781 (6) (141 SE2d 893) (1965).

2. The second enumeration of error contends that the trial court erred in allowing over objection, Dr. Howard, to testify for the state when his name had not been furnished to the accused prior to trial. The witness from the State Crime Laboratory who was originally to be used in such

case was in Mexico and unavailable as a witness when the case was set for trial and the district attorney so stated at the time Dr. Howard was called as a witness. No demand for a list of witnesses appears in the record, and in order to invoke the provisions of Code Ann. § 27-1403 prohibiting the state from calling a witness when the defendant has not been furnished such name, it is necessary that a demand for a list of witnesses be made before arraignment. *Jones v. State,* 224 Ga. 283 (5) (161 SE2d 302) (1968); *Prather v. State,* 223 Ga. 721 (157 SE2d 734) (1967). In this case, as in *Yeomans v. State,* 229 Ga. 488 (1) (192 SE2d 362) (1972): "It was not error to allow an expert witness for the State to testify, whose name had not been furnished to the appellant until a few moments before the trial, since the State's attorney did not know which witness would be sent by the State Crime Laboratory to testify in the case."

In the case sub judice where the witness to be used arrived only on the morning he was called as a witness and had not previously talked to the district attorney, and the appellant's counsel was given an opportunity to question the witness prior to his taking the stand, the trial court did not err in permitting the witness to testify. This enumeration of error is without merit.

3. The third enumeration of error contends that the trial court erred in restricting the defendant's testimony in the sentencing phase of his trial.

The defendant did not testify during the guilt or innocence phase of the trial but while testifying in the sentence phase was asked by his counsel: "Will you tell the jury as best you know how exactly what did happen?" The trial court sustained an objection to the question, which ruling is the basis of this enumeration of error. In support of the contention that such exclusion of evidence was error the appellant relies on *Eberheart v. State,* 232 Ga. 247, 253 (206 SE2d 12) (1974), where it was held: "The bifurcated trial was created to withhold matters inadmissible on the issue of guilt or innocence from the jury until that issue had been determined. The statute is clear that the pre-sentence hearing is for additional evidence and in no way excludes from consideration on sentence the matters heard on the issue of guilt or

innocence." This decision holds as to a capital felony that evidence introduced on the guilty or innocence phase of the trial would not have to be reintroduced in order to authorize the jury to find that one of the statutory aggravating circumstances set forth in the Act of 1973 (Ga. L. 1973, pp. 159, 163; Code Ann. § 27-2534.1) existed or to consider any mitigating circumstances shown by evidence on the guilt or innocence phase of the trial.

The basis of the trial court's ruling which sustained the state's objection was that "he had every opportunity during the trial of the case to say what happened or to go into his version of it, every right, but in this phase I would have to sustain the objection."

In *Williams v. State,* 226 Ga. 140 (1) (173 SE2d 182) (1970), a case which was retried on the question of sentence only, it was held that a jury could consider the defendant's "alibi" to mitigate his sentence. The Act of 1970 (Ga. L. 1970, pp. 949, 950) as amended by the Act of 1971 (Ga. L. 1971, p. 902; Code Ann. § 27-2534) repealed and superseded by the Act of 1974 (Ga. L. 1974, pp. 352, 357; Code Ann. § 27-2503) provided that after a verdict of guilty the court shall conduct a "[presentence] hearing, subject to the laws of evidence, the jury shall hear additional evidence in the extenuation, mitigation and aggravation of punishment, including the record of any prior criminal convictions and pleas of guilty or pleas of nolo contendere of the defendant, or the absence of any such prior criminal convictions and pleas . . ." The 1974 Act, supra, did not change the evidence which would be admissible at such hearing.

In the present case the defendant did not testify on the guilt or innocence phase of his trial. He did testify on the presentence hearing and thus the question is clearly presented as to whether a defendant who remains silent on the guilt or innocence phase is precluded from testifying to the circumstances surrounding the crime prior to being sentenced.

Most of the cases dealing with the admissibility of evidence at a presentence hearing after a guilty verdict has been returned relate to evidence offered by the state in aggravation, and few with evidence in mitigation.

In 1970, the General Assembly in revising the

criminal procedures in this state and providing for a separate trial on the question of sentence after a jury returned a verdict of guilty expressly provided that only such evidence in aggravation that the state has made known to the defendant prior to his trial shall be admissible (Ga. L. 1970, pp. 949, 950), supra. No such limitation was placed on the evidence that the defendant could introduce. The Act merely provided that the jury should hear additional evidence in the extenuation or mitigation of punishment. In *Dudley v. State,* 228 Ga. 551, 561 (186 SE2d 875) (1972), a majority of this court held that the issue to be decided at the presentence hearing calls for different evidence from that on the trial which determines guilt or innocence. The *Dudley* decision held that evidence of general bad character could be admitted in those cases when the defendant had been notified prior to trial that such evidence would be presented.

In People v. Popescue, 345 Ill. 142 (177 NE 739, 77 ALR 1199) (1931), testimony as to the circumstances surrounding the crime was heard from the defendants prior to sentence being imposed although guilty pleas had previously been received by the court. In that case, as in a majority of cases found, the real question to be decided was whether evidence of another similar crime committed by the defendant was admissible in aggravation. It was the testimony of the defendants as to the circumstances of the crime charged that permitted the evidence of a prior crime to be adduced in rebuttal as well as to show aggravation.

Accordingly, the trial court erred in sustaining the state's objection to testimony sought to be elicited from the defendant as to "exactly what did happen." The fact that the defendant was permitted to testify to the conclusion that he did not intend to kill the victim and that it was an accident would not render such ruling harmless.

To hold under our bifurcated trial procedure that a defendant, in order to tell his story in mitigation of punishment, must forfeit his right to remain silent during the guilt or innocence phase of his trial would violate the provisions of Art. I, Sec. I, Par. V of the Constitution of

1945 (Code Ann. § 2-105), whereas to construe the presentence hearing statute so as to permit a defendant who has remained silent to testify at the presentence hearing as to the facts surrounding the crime, would not.

4. The fourth enumeration of error contends that the trial court erred in admitting in evidence the alleged murder weapon over an objection that it was obtained as a result of an illegal search and seizure.

A deputy sheriff testified that he received a call from a reliable informant (from whom he had received information in the past which resulted in convictions) that the defendant had a stolen .12 gauge shotgun in his possession and would be in a two-tone Chevrolet with a named individual at a particular location in Jeff Davis County. He further testified that he proceeded to the location, located an automobile which met the description, the defendant and the described companion, that he told the defendant he was looking for a stolen shotgun and the defendant voluntarily opened the trunk of the automobile, the shotgun was seized and the defendant taken into custody and a warrant obtained for his arrest as soon as possible thereafter. After the defendant was arrested, an inventory was made of the contents of such automobile and the pistol, in plain view on the floorboard was seized. Its seizure was not illegal, and the trial court did not err in overruling the objection to its admission in evidence.

5. The guilty verdict was authorized by the evidence but inasmuch as a new trial must be granted on the question of sentence only no sentence review under the Act of 1973 (Ga. L. 1973, p. 159; Code Ann. § 27-2537) will be granted at this time.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

ARGUED OCTOBER 7, 1975 — DECIDED DECEMBER 2, 1975.

*Emmett P. Johnson,* for appellant.
*W. Glenn Thomas, Jr., District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.