STATE of Tennessee, Petitioner,

v.

Andrew MACKEY, Respondent.

Supreme Court of Tennessee.

June 20, 1977.

Michael E. Terry, Asst. Atty. Gen., Nashville, for petitioner; R. A. Ashley, Jr., Atty. Gen., Nashville, of counsel.

Edward A. Love, Chattanooga, for respondent.

## OPINION

BROCK, Justice.

This is an appeal from a judgment and sentence of not less than one or more than two years in the state penitentiary on a plea of guilty to the charge of felonious escape. Two principal questions are presented: (1) whether the trial record adequately demonstrates that the guilty plea was voluntarily, understandingly, and intelligently made as required by *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); and (2) whether evidence of defendant's prior convictions and other alleged misconduct was admissible before the jury selected to determine the issue of punishment.

Andrew Mackey was charged with felonious escape from the custody of the Hamilton County sheriff while awaiting trial on charges of grand larceny, burglary, and possession of burglarious tools. Represented by appointed counsel, the defendant pleaded guilty to the charge, and requested that a jury be impanelled "to hear the evidence and fix the time of confinement" in the penitentiary.

The record discloses that the trial judge asked no questions of the defendant concerning his plea, and the defendant did not address the court. The total colloquy between the judge and the defendant was as follows:

"The Court: . . . How do you plead, Mr. Mackey, how do you plead to the indictment?

"Mr. Mackey: Guilty.

"The Court: How?

"Mr. Mackey: Guilty.

"The Court: All right. . . ."

The record discloses a reference to a somewhat protracted discussion between the defendant and his lawyer as to whether defendant should plead guilty. This discussion, of course, was off the record; nothing is actually known regarding the import or content of the discussion.

Six months before this trial for felonious escape, defendant was convicted for armed robbery and rape, felonies committed the day following his escape. On the day of this trial, before defendant entered his plea of guilty to the charge of felonious escape, defense counsel made a motion *in limine* that the State be prohibited from introducing evidence of defendant's convictions for the armed robbery and rape, apparently taking the position that such evidence was irrelevant to the determination of punishment for felonious escape. The trial judge declined to rule immediately on counsel's motion but subsequently, over defense counsel's objection, admitted into evidence court records of the convictions. At this juncture, defense counsel objected to the admission of defendant's prior convictions on the premise that defendant had not taken the stand in his own defense and, hence, his character and reputation were not in issue.

During a recess of the hearing, Mackey allegedly attempted to escape once again. Testimony of the deputy sheriff regarding this attempt was also admitted into evidence over defense counsel's objection.

Defendant Mackey never took the stand during the course of the hearing nor did counsel introduce any mitigating evidence in his behalf. No attempt was made to withdraw defendant's plea of guilt.

The jury set defendant's punishment for his admitted felonious escape at a minimum of one (1) year and a maximum of two (2) years in the penitentiary.

Defendant appealed to the Court of Criminal Appeals, assigning as error: (1) that the trial court admitted evidence of defendant's convictions for armed robbery and rape; (2) that the trial court admitted testimony regarding defendant's attempted escape during a recess of the trial; and (3) that defendant's guilty plea was involuntary because he had not been advised by the trial judge that his prior convictions would be allowed in evidence.

The Court of Criminal Appeals determined that proof of defendant's prior convictions was inadmissible but disposed of the case on grounds that the guilty plea was not voluntary under the authority of *Boykin, supra*. Finding that the trial judge made no affirmative investigation as to the voluntariness or intelligence of defendant's guilty plea, the Court of Criminal Appeals vacated defendant's guilty plea and reversed and remanded the case for a new trial.

We granted the State's petition for certiorari review.

I

■ As the United States Supreme Court recognized in *Boykin, supra*, "a plea of guilty is more than an admission of conduct; it is a conviction." When a plea of guilty is entered in a criminal trial, the defendant simultaneously waives several constitutional rights, including his privilege

against compulsory self-incrimination, his right to a trial by jury, and his right to confront his accusers. Moreover, in this State, as we hold *infra,* he also waives the right to exclude from the jury determining his punishment evidence of his prior convictions. For this waiver to be valid under the due process clause of the Fourteenth Amendment, it must be "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Our system of justice cannot tolerate the presumption that a defendant voluntarily relinquished such fundamental rights. Therefore, the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i. e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an "intentional abandonment of a known right."

*Boykin* concerned a defendant who had pleaded guilty in a state court to five armed robbery indictments and thereafter received the death penalty. At arraignment, "so far as the record shows, the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court." Thereafter, as required by Alabama law, a jury was impanelled to fix the penalty, and the prosecution presented its case to this jury "largely through eyewitness testimony." Taking an automatic appeal to the Alabama Supreme Court, petitioner argued unsuccessfully that a sentence for death for robbery was cruel and unusual punishment, but three members of the Alabama court dissented on the ground that the record was inadequate to show that petitioner had intelligently and knowingly pleaded guilty.

The United States Supreme Court reversed, concluding that it ". . . was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." The Court clearly stated its position: "We cannot presume a waiver of [. . .] important federal rights from a silent record."

The Court further stated:

"What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought (citations omitted), and forestalls the spin-off of collateral proceedings that seek to probe murky memories." 89 S.Ct. at 1712–1713.

■ The State contends that the *Boykin* issue was not properly raised before the Court of Criminal Appeals or before this Court, but we do not agree. On appeal, the defendant's brief contained the following assignment of error:

"The defendant was not fully advised by the judge of the consequences of pleading guilty before the jury in that he was not aware that the crimes for which he had been convicted would be allowed into evidence at his trial, and therefore his guilty plea was not a knowing, voluntary and intelligent consent to let the jury decide his punishment."

It thus appears that the defendant did assign as error the voluntariness and understanding of his guilty plea, though the assignment narrows the grounds for the error.

■ Whether properly assigned or not, appellate courts of this State may properly consider plain error upon the record. Rule 15(2), Tennessee Supreme Court Rules; *Davidson v. State,* 223 Tenn. 193, 443 S.W.2d 457 (1969); *Baldwin v. State,* 213 Tenn. 49, 372 S.W.2d 188 (1963); T.C.A. § 40–3409.

In our opinion, the record fails to disclose compliance with the requirements of the *Boykin* decision, but, we are not content to allow the issue to rest there. This Court in the exercise of its supervisory power to insure that the courts of this State afford fairness and justice to defendants in criminal cases may require stricter standards than those mandated by the *Boykin* deci-

sion. *Smith v. State,* 205 Tenn. 502, 327 S.W.2d 308 (1959). In the exercise of that jurisdiction, we hold that trial judges in accepting pleas of guilty in criminal cases must adhere, substantially, to the following procedure, to wit:

■ A. Before accepting a plea of guilty, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) The nature of the charge to which the plea is offered, and the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and, if applicable, that a different or additional punishment may result by reason of his prior convictions or other factors which may be established in the present action after the entry of his plea; and

(2) If the defendant is not represented by an attorney, that he has a right to be represented by an attorney at every stage of the proceeding against him, and if necessary, one will be appointed to represent him; and

(3) That he has a right to plead not guilty or to persist in that plea if it has already been made, and, that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(4) That if he pleads guilty, there will not be a further trial of any kind except to determine the sentence so that by pleading guilty he waives the right to a trial; and

(5) That if he pleads guilty, the court or the state may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement, and, further, that, upon the sentencing hearing, evidence of any prior convictions may be presented to the judge or jury for their consideration in determining punishment.

■ B. The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty results from prior discussions between the District Attorney General and the defendant or his attorney.

■ C. Notwithstanding the acceptance of a plea of guilty, the court shall not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

■ D. A verbatim record of the proceedings at which the defendant enters a plea shall be made and, if there is a plea of guilty, the record shall include, without limitation, (a) the court's advice to the defendant, (b) the inquiry into the voluntariness of the plea including any plea agreement and into the defendant's understanding of the consequences of his entering a plea of guilty, and (c) the inquiry into the accuracy of a guilty plea.

■ In the instant case, the prior convictions of the defendant would not have been admissible before the jury if the defendant had entered a plea of not guilty[1] but, as we hold *infra,* such convictions were admissible in evidence upon a plea of guilty. There can be no doubt that the admission of such evidence is calculated to have the effect of enhancing the punishment; therefore, the defendant should have been informed by the trial judge that such evidence would be admissible as a consequence of his entering a plea of guilty. Moreover, the record should affirmatively disclose that

1. See footnote 2.

such advice was imparted to the defendant before his plea of guilty was accepted. Since the record in the instant case is silent in this respect, we cannot presume that the defendant was so advised, but, on the contrary, must conclude that the defendant entered a plea of guilty without understanding the consequences in this respect of such a plea. Accordingly, we affirm the judgment of the Court of Criminal Appeals, reversing the conviction and remanding the case to the trial court for a new trial.

## II

Was it error for the trial court, after the defendant had entered a plea of guilty, to admit evidence before the jury of his prior convictions? We hold that it was not.[2]

■ In Tennessee, the jury is required to fix the sentence in all cases when the punishment is confinement in the penitentiary. See T.C.A. §§ 40–2707 and 40–2310. When the charged offense is a misdemeanor, punishable by imprisonment in the county jail or workhouse, the term of imprisonment is fixed by the judge, T.C.A. § 40–2704, but if the defendant pleads not guilty to the misdemeanor, sentencing by the jury as part of its verdict is available at the defendant's option.

At common law, the jury returned a verdict of guilty or not guilty; the power to sentence rested with the court. After the jury returned a verdict of guilty, the court heard additional character evidence before determining the sentence. In many jurisdictions, distrust of a powerful judiciary motivated a statutory transfer of the power of sentencing from the court to the jury. Tennessee enacted such a statute in 1829, Acts of 1829, ch. 23, sec. 76, amending the penal laws two years later to provide for jury sentencing upon a plea of guilty. Acts of 1831, ch. 83, § 1.

Much of our case law dealing with evidentiary questions must be read with an appreciation of the distinctions implicit in the jury sentencing statute. Thus, in *Cason v. State,* 160 Tenn. 267, 23 S.W.2d 665 (1930), the defendant was tried for public drunkenness on a plea of not guilty. He was found guilty by the jury and the court imposed a fine and workhouse sentence. After the jury's verdict, several adverse witnesses were called and examined by the court and testified that defendant had the reputation of a bootlegger. Defendant objected to the admission of their testimony. The Court replied:

"It is now well settled that, where it devolves on the court to determine the amount of punishment, either on a verdict by a jury or on a plea of guilty, evidence may be received in aggravation or mitigation of the punishment. (Citing authorities.) The reason for the admission of such evidence is to enable the court to inform himself as to the character of the accused and the circumstances of the crime, so that he may be able to exercise his discretion intelligently and pronounce a just sentence; a privilege of his in the exercise of which he doubtless should use the utmost caution. The punishment should be proportioned to the offense, and should be made to fit the crime and not the offender. On a charge of drunkenness, the accused could not be punished for some other offense." 23 S.W.2d at 667.

A cluster of confusing "bootleg" cases have followed *Cason. Anderson v. State,* 165 Tenn. 569, 56 S.W.2d 731 (1933); *Cox v. State,* 184 Tenn. 203, 197 S.W.2d 812 (1946); *Courtney v. State,* 185 Tenn. 247, 205 S.W.2d 752 (1947); *McInturff v. State,* 207 Tenn. 108, 338 S.W.2d 564 (1960); *Vowell v. Tennessee,* 207 Tenn. 598, 341 S.W.2d 735 (1960). In *Anderson v. State, supra,* the

---

2. It should be kept in mind that we do not here deal with the admissibility for impeachment purposes of evidence of prior convictions or specific acts of a defendant who becomes a witness. The rules governing that situation were recently laid down in *State v. Morgan,* Tenn., 541 S.W.2d 385 (1976) in a definitive

opinion written for the Court by Mr. Justice Fones. Neither do we deal with the problem posed when evidence of the commission by the defendant of other crimes is offered as being relevant to an issue raised in the case on trial. See *Collard v. State,* Tenn., 526 S.W.2d 112 (1975), opinion by Mr. Chief Justice Cooper.

defendant pleaded not guilty to a violation of the prohibition statute. His reputation as a bootlegger was admitted into evidence but limited to the question of punishment. While citing *Cason, supra,* the Court observed that:

"... where the punishment is to be fixed by the jury, we have been unable to find any authority authorizing the introduction by the state of testimony as to the bad reputation of accused, where his character is not in issue, even though it be limited as to the amount of punishment, as was done in this case." 56 S.W.2d at 732.

The Court apparently accepted the effectiveness of the trial court's limiting instruction but held the reputation testimony error because of the lack of specific precedent.

The rule somehow distilled from this line of cases was stated by the Court in *Vowell, supra:*

"Since *Anderson v. State* (citation omitted) decided more than 25 years ago, it has been the established rule of this Court that where the defendant has not testified and has not put his character in issue, it is error to permit the State to prove that he has the reputation of being a 'bootlegger * * * or a violator of the liquor laws.'" 341 S.W.2d at 737.

It may be doubted whether this "rule" or any other can be derived from a reading of the "bootleg" cases. Fundamental procedural distinctions are not dealt with satisfactorily. None deal with the jury sentencing problem with which we are concerned in the instant case, i. e., after a plea of guilty.

That *Vowell* does not state a settled rule of law on the subject under consideration is shown by the Tennessee cases involving habitual criminal statutes or other statutes providing for an enhanced penalty upon repeated convictions. These cases are well summarized in *Harrison v. State,* 217 Tenn. 31, 394 S.W.2d 713 (1965).

One other significant Tennessee case should be mentioned. In *Knowles v. State,* 155 Tenn. 181, 290 S.W. 969 (1927), the defendant pleaded guilty to embezzlement and his punishment fixed by the jury at 5–10 years. The State introduced *no* evidence upon which the jury might base their exercise of discretion in determining the period of punishment. Apparently, the jury simply heard the charge and returned the verdict. The Court determined that the legislative purpose of the statute providing for jury sentencing upon a plea of guilty was:

"... to vest in the jury the power to exercise a sound discretion impossible of intelligent exercise without a hearing of at least such of the evidence as might reasonably affect the judgment of the jury as to the proper degree ... of the punishment." 290 S.W. at 969.

The Court reversed and remanded the case.

It appears that a majority of other jurisdictions considering this issue have adopted a policy of admitting evidence of prior convictions for consideration by the sentencing agency whether it be judge or jury. See Annotation, "Sentence—Other Offenses—Consideration," 96 A.L.R.2d 768 (1964). As shown by *Rojas v. State,* Tex.Cr.App., 404 S.W.2d 30 (1966), the Texas courts admit evidence of prior convictions before the jury at a sentencing hearing, pursuant to the Texas Code of Criminal Procedure which provides:

"Regardless of whether the punishment be assessed by the judge or the jury, evidence may be offered by the State and the defendant as to the prior criminal record of the defendant, his general reputation and his character." [Art. 37.07, § 2(b)]

The court said such evidence should go to the jury "... to protect the interests of the State, by preventing aggravated cases of crime to be covered up by the plea of guilty, so as to allow the criminal to escape with the minimum punishment fixed by law." 404 S.W.2d at 34. See also *Basaldua v. State,* Tex.Cr.App., 481 S.W.2d 851 (1972).

For similar cases in other jurisdictions, see *People v. Tolbert,* 70 Cal.2d 790, 76 Cal.Rptr. 445, 452 P.2d 661 (1969) (statute allows evidence of "any facts in aggrava-

tion or mitigation of the penalty."); *Dudley v. State,* 228 Ga. 551, 186 S.E.2d 875 (1972) (statute allows jury to hear evidence "in extenuation, mitigation and aggravation of punishment, including the record of any prior criminal convictions . . . ."); *U. S. v. Dalhover,* 96 F.2d 355 (7th Cir. 1938), cert. den. 305 U.S. 632, 59 S.Ct. 100, 83 L.Ed. 406; and other cases cited in 96 A.L. R.2d at 811, and in the State's brief.

Although most of the cases from other jurisdictions are based upon statutory law, they are, nonetheless, useful. The above mentioned Annotation states that the "great majority" of jurisdictions hold that it is proper for a sentencing judge to consider a past criminal record, for the following reasons:

"(The cases) have declared that such practice is in keeping with the philosophy that the punishment should be suited to the offender as well as to the crime, and that the defendant is benefited and society protected, since a first offender is usually dealt with leniently, and deservedly severer measures are authorized in the case of a hardened criminal; and the arguments have been rejected that such practice involves double punishment for crimes for which the defendant has been previously convicted and punished, or violates his constitutional or fundamental rights, or that the rule ordinarily excluding evidence of unrelated other offenses at a criminal trial of the guilty issue is applicable." 96 A.L.R.2d at 772. And see 21 Am.Jur.2d, Criminal Law, § 585.

We are of the opinion that the proper procedure to be followed at a hearing to determine the sentence following a plea of guilty is as follows:

A. Evidence may be presented by the defendant and by the State with respect to any matter relevant to the issue of sentence.

B. Matters relevant to the issue of sentence shall include but not be limited to the following:

(1) Matters of fact concerning the offense and the circumstances surrounding it, not limited to aspects developed for the record as part of the determination of guilt;

(2) a full description of any prior criminal record of the defendant, his reputation and character;

(3) a description of the educational background of the defendant;

(4) a description of the employment background of the defendant, including any military record and including present employment status and capabilities;

(5) the social history of the defendant, including family relationships, marital status, interests and activities, residence history, and religious affiliations;

(6) the defendant's medical history, and, if available, a psychological or psychiatric report, copies of which shall be furnished adversary counsel immediately upon acceptance of a plea of guilty; and

(7) supplementary reports from clinics, institutions, and other social agencies with which the defendant has been involved.

Any such evidence that the court deems to be trustworthy and probative may be received, regardless of its admissibility under exclusionary rules of evidence.[3]

It is our hope that this procedure will improve the administration of justice and will align this State with the modern philosophy that punishment should fit the offender as well as the crime. This concept was well stated by the United States Supreme Court recently as follows:

"The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender. This whole country has traveled far from the period in which the

---

**3.** The procedure herein specified does not apply to "agreed cases" which continue to be governed by T.C.A., § 40–2310.

death sentence was an automatic and commonplace result of convictions—even for offenses today deemed trivial. Today's philosophy of individualizing sentences makes sharp distinctions for example between first and repeated offenders." *Williams v. New York,* 337 U.S. 241, 247–8, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949).

Such a procedure violates no constitutional right of the defendant. *Williams v. Oklahoma,* 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); *Crampton v. Ohio,* 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971); *U. S. v. Dalhover, supra.*

■ Accordingly, we hold that the admission by the trial judge of evidence of the defendant's prior convictions and of his attempt to escape from custody during the instant trial was entirely proper and that the Court of Criminal Appeals erred in holding to the contrary.

The judgment of the Court of Criminal Appeals is vacated and that of the trial court is reversed and the cause is remanded for a new trial, consistent with this opinion.

COOPER, C. J., and FONES, HENRY, and HARBISON, JJ., concur.