**STATE of Tennessee, Appellee,**

v.

**James H. KNIGHT, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Nov. 4, 1988.

Jim D. Owen, Knoxville, for appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Kathy M. Principe, Asst. Atty. Gen., Nashville, Al Schmutzer, Jr., Dist. Atty. Gen., and Richard Scroggins, Asst. Dist. Atty. Gen., Sevierville, for appellee.

## OPINION

REID, Judge.

This case presents an appeal as of right from an order dismissing Appellant's petition for post-conviction relief after an evidentiary hearing.

The petition attacks a negotiated plea, on which Appellant pled guilty to the sale of more than 30 grams of substance containing cocaine, waived venue and arraignment and pled guilty to two charges of selling one-half ounce of substance containing cocaine in an adjoining county and received concurrent sentences of 17 years, 4 years and 4 years.

Appellant asserts he was denied effective assistance of counsel. He claims he was improperly induced to plead guilty, his attorney was not prepared for trial and he was prevented from pursuing the defense of entrapment because of a conflict of interests between him and his co-defendant both of whom were represented by the same attorney.

The record shows there was a conflict of interests and counsel was not ready for trial; the evidence preponderates against the court's finding that Appellant received effective assistance of counsel. The record further shows that acceptance of the guilty plea did not meet the requirements of *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and *State v. Mackey,* 553 S.W.2d 337 (Tenn.1977).

## MOTION FOR CONTINUANCE

A week before Appellant pled guilty, trial counsel advised the court, "I don't see how we can get ready" and based upon information received from the district attorney general "It looks like there may be a conflict. That I can't represent both parties." The court told counsel "you need to resolve that quickly" and refused to postpone the trial.

On the day of trial when the case was called, counsel announced to the court, "I represent the defendants and we're not ready." He stated to the court that he had not been able to get evidence from the State, he had not talked to witness Denton and "[N]ow I listened to the tapes that I have, and it now appears that I shouldn't represent [Appellant] in this case. And .. I need to talk to him about that." The court found upon inquiry of counsel that the State had made available to defense counsel the crucial tape recordings and otherwise had complied with its duty as to discovery. With regard to conflict of interests the court merely recalled its previous admonition to counsel and ordered the trial to proceed.

Appellant acknowledged that he participated in the drug transactions and that his only defense was entrapment. Denton, the witness mentioned by counsel, was crucial to any claim of entrapment. Denton, who operated under the direction of T.B.I. agent Mack Smith, had instigated the drug purchases made by Appellant and apparently was the only person who knew the involvement of all the parties and the extent to which the State had encouraged Appellant's participation. Trial counsel told the court he had not talked with Denton and requested, but did not receive, time to talk with him before jury selection began. (Denton was present on the day of trial, to answer an indictment for larceny of chickens.) It appears there was a brief conversation between counsel and Denton on the courthouse steps sometime before the guilty plea was entered. However, according to trial counsel's testimony on the post-conviction hearing, he still was not sure of the role played by Denton in the drug transactions.

## GUILTY PLEA

After the jury was impaneled, the court began hearing co-defendant's motion to suppress incriminating statements while in custody of T.B.I. agents. (Appellant gave no statement to the arresting officers.)

After the noon recess in the hearing, defense counsel and the district attorney general advised the court that a plea bargain would be submitted as to both defendants.

Until Appellant was arrested in open court by the trial judge on the day of trial, he did not know that he had been indicted in Sevier County on the two one-half ounce charges, which were included in the negotiated plea and which were used, in the words of the court, to "enhance" a 15 year sentence to 17 years. The court asked Appellant if he had been in the courtroom earlier when "I was talking to somebody from Grainger County about a case that they were pleading over here?" Appellant responded that he had been present in the courtroom. Next appears in the record the transcript of a proceeding in which a Grainger County defendant named Hicks waived venue, which apparently was intended to constitute advice to Appellant, who, upon the court's inquiry, agreed to waive venue and all other rights incident to the Sevier County charges.

After advising the defendants the minimum and maximum penalties, the court stated:

I know some recommendation is going to be made to me, I don't have any idea what it is. I'll probably approve it. I want lawyers to resolve cases. It's in my interest and in the public interest that the cases be resolved. It saves everybody a lot of grief. It makes certain that which is uncertain. First step toward getting yourself straightened up, is to confess your guilt, it's a catharsis; it's the first step on the way to getting yourself straightened out. It should be encouraged, I do encourage it. I will probably approve the recommendation.

In advising the defendants regarding the offenses charged, the Court stated, at various places in the record:

"You're just charged with this one offense .. or whatever you're charged with here in this county? I don't know that I've paid that much .. sale of *a kilo* of cocaine? *2 pounds* of cocaine is .. what I'm told." (Emphasis added.)

.     .     .     .     .

Let's see, you all waived jury trials, didn't you? Then we got to talking about what you're guilty of .. are you guilty of a sale or aiding and abetting a sale? Which is the same thing? Are you guilty of a sale of cocaine, or aiding and abetting a sale of *2 kilos.* (Emphasis added.)

.     .     .     .     .

I find both of you guilty. Mr. Hill and Mr. Knight now, we're talking about this case. I find each of you guilty of sale .. aiding and abetting a sale .. which is the same as a sale of cocaine, *one kilo."* (Emphasis added.)

There also was some confusion as to the offense to which the plea was being entered. When Appellant undertook to explain his involvement, he was interrupted by the district attorney general who stated his understanding. Defense counsel expressed the opinion "It doesn't make any material difference" and the court stated:

The Court: Well he's guilty of a sale, because they had the same purpose. Let's just call it sale, and go on, we don't have to worry about it, we can get it over right now, Gentlemen. You may have been a conspiracy .. as a matter of fact it was a conspiracy, if you aided and abetted. Same basic thing. Conspiracy is like an accomplice. Same deal. I don't know how far along I got in this.

The record then shows the following in response to Appellant's request to make a statement:

MR. KNIGHT: Your Honor weill [sic] we get a chance to make a statement before this?

THE COURT: If you want to yes sir. Now what I'm going to do, I'm going to mistry the lawsuit as to the jury, I'm going to take it myself .. what that means frankly is you're wired, and you can't back out. That's the reason the jury is out, and I'm talking to you now. Because see if you backed out, I'd bring the jury in, and we'd just try the lawsuit. That covers it.

Nobody's wanting to back out? You're still guilty? And you're still prepared to

stipulate the facts? We'll stipulate the facts, in front of the jury. But you want to make a statement? You say? You can make any statement you want to, to me, it doesn't make any difference. (pause)

(statement then relayed to attorney)

MR. PATTY: Judge what Mr. Knight wanted .. I think this is more or less explain to the court that he didn't have any intention of getting into this large type of stuff. That somebody else .. in other words I guess the Agent wanted to find some large amounts is what he's trying to say.

THE COURT: You don't have a lot of confidence in your entrapment defense, but you really need none, you feel like you were entrapped anyway. You were a small time dealer, dealing in small stuff, half ounces, and you didn't mean to get into kilos.

MR. KNIGHT: No your Honor, I'm not a dealer at all.

THE COURT: That's what you mean to tell me?

MR. KNIGHT: Not a dealer at all .. the only dealing I've done, was with [T.B.I. agent] Mack Smith. With cocaine.

THE COURT: You're entitled to tell me that sir.

Now you know that .. the way .. the posture it's in now, is they're going to make a recommendation that you all will join in, and my .. the only question for me is up or down, yes or no, approve it or disapprove it? You know that?

Both defendants nod they understand

## ASSISTANCE OF COUNSEL

The only evidence in the record as to the involvement of the various parties in the drug transactions is the testimony of Appellant. (The State announced that an agent involved in the purchases was present but declined to call him as a witness.) Based on Appellant's testimony he had an arguable defense of entrapment. The record shows that Appellant and the co-defendant were differently situated with regard to the two essential elements of entrapment, absence of a predisposition to commit the offense charged and inducement by state agents to commit the offense. *State v. Jones*, 598 S.W.2d 209 (Tenn.1980). There was credible evidence on which Appellant could claim he was not predisposed to become involved in the sale of illegal drugs. Except for the transactions in this case, he never had been involved with drugs in any way and he never had been charged with any violation of the law. He was 38 years of age and had been gainfully employed since receiving an associate degree in electrical engineering from the University of Tennessee. He had passed an F.B.I. security clearance for employment in a T.V.A. nuclear plant.

There also was credible evidence on which Appellant could claim he was persuaded to make the drug purchases by agents working for the State. Denton initiated a friendship with Appellant over a period of several months and, at the agent's repeated request, Appellant located a source from which he made a one-half ounce purchase. The second one-half ounce purchase was made sometime later under the same circumstances. The purchase which triggered the prosecution also was made upon the initiative of the agent through the co-defendant, who had been introduced to Appellant subsequent to the other purchases.

The co-defendant was referred to as having "Latin" and "Florida" contacts. Since he was the source of the large purchase of drugs, it hardly could be claimed on his behalf that he was not predisposed to sell drugs. Also there is no indication in the record that the co-defendant was recruited by state agents. A defense dedicated only to Appellant would have exploited these differences.

The only witness called by the State on the post-conviction hearing was Appellant's trial counsel, who affirmed, with little specific factual support, that he provided effective assistance and that the conflict in interests was "potential" not "actual." He admitted he was expecting Appellant to locate Denton and select and have available at trial all other witnesses for the defense. Two days before trial he obtained the tapes

of conversations between his clients and state agents, which was the State's main proof, but had not completed the tapes when the case was called for trial. He also admitted that in discussing the guilty plea he told his client he was "facing" ten years to life. There is no indication in the record that counsel knew his client would not receive a Range II sentence and therefore the maximum was 35 years. Appellant testified his first knowledge that the maximum was 35 years was when informed by the court on the guilty plea. Counsel was not able to dispute his client's testimony that when the client was "beeped" by telephone to be in court the next day he did not know the case was to be tried that day.

Trial counsel also testified he was relying upon his clients to tell him if there was any conflict or any reason why he could not represent them both. He testified that entrapment could be a "favorable defense" depending upon the composition of the jury. Counsel did not explain how he, as attorney for both defendants, could assert on behalf of Appellant a defense of entrapment which reasonably would have required that he exploit to the co-defendant's detriment the differences in their respective situations.

With regard to conflict of interests, this case is similar to *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). In that case the Supreme Court reaffirmed the rule announced in *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942) that joint representation is not *per se* denial of the constitutional right to effective assistance of counsel. However the court held that upon counsel's representation to the court prior to trial and again at trial before the jury was impaneled that he "was confronted with the risk of representing conflicting interests" the court was obligated "to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." *Supra*, 98 S.Ct. at 1175, 1178.

Tennessee Supreme Court Rule 8, Canon 5 of the Code of Professional Responsibility speaks to the protection of the interests of multiple clients.

DR 5–105(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

Ethical Considerations EC 5–15 provides, in part:

If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests.

From the record it is not "obvious" that counsel could "adequately represent the interest of each" defendant and it does not appear that Appellant consented to the representation "after full disclosure of the possible effect of such representation" on his defense.

In the case before the Court, *Holloway v. Arkansas, supra,* required the trial judge, when advised by counsel that he was not ready for trial and should not represent Appellant, to take the action necessary to determine if there existed circumstances which would deny the defendants effective assistance of counsel.

Counsel stated to the court that he was not ready for trial and that he should not represent Appellant because of a conflict of interests. The record supports the truthfulness of both statements. There is no suggestion in the record that there was any reason or need for a continuance other than those stated by counsel. The record does not support the trial judge's finding that the statements were only a "ploy."

## *MACKEY* COMPLIANCE

The proceedings whereby the plea of guilty was accepted did not afford the "fairness and justice" ensured by *Mackey, supra*, at 340. There can be no assurance from the record that Appellant was informed and understood "all the significant consequences of a guilty plea and the constitutional rights that he was waiving." *Rounsaville v. Evatt*, 733 S.W.2d 506, 508 (Tenn.1987).

In addition specific requirements mandated by the Supreme Court in *Mackey* were omitted. The record fails to show that Appellant was advised by the trial judge:

(3) That he has a right ... to persist in [a plea of not guilty] if it has already been made, ... and at that trial has a right to the assistance of counsel, ... and the right not to be compelled to incriminate himself; and

(5) That if he pleads guilty, the court or the state may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement,....

*Id.*, at 341.

The requirement that an accused be informed of his privilege against self-incrimination is constitutional. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 89 L.Ed.2d 274 (1969); *Mackey, supra; Rounsaville, supra.*

## JUDGMENT

The judgment of the trial court is reversed, the guilty plea and convictions thereon are set aside and the case is remanded.

DWYER and BIRCH, JJ., concur.

DWYER, Judge, concurring.

The majority, *sua sponte*, finds that the guilty plea as entered by the appellant in the case *sub judice* was not in accord with the requirements of *State v. Mackey*, 553 S.W.2d 337 (Tenn.1977) as reiterated in *Rounsaville v. Evatt*, 733 S.W.2d 506 (Tenn.1987). A careful review of the record reveals that the appellant suffered a deprivation of constitutional proportion by the trial court's failure to properly advise him of his privilege against self-incrimination. *See Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 89 L.Ed.2d 274 (1969).

Accordingly, I concur in this finding and in the majority's reversal and remand of the judgment of the trial court.