IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

FEBRUARY 1999 SESSION

FILED

March 19, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| RODNEY E. AYERS, | ) | |
| | ) | C.C.A. No. 02C01-9805-CR-00149 |
| Appellant, | ) | |
| | ) | Shelby County |
| v. | ) | |
| | ) | Honorable Carolyn W. Blackett, Judge |
| STATE OF TENNESSEE, | ) | |
| | ) | (Post-Conviction Relief) |
| Appellee. | ) | |

FOR THE APPELLANT:

Richard F. Vaughn
100 North Main, Suite 1928
Memphis, TN  38103

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue North
Nashville, TN  37243

J. Ross Dyer
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243

William L. Gibbons
District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN  38103

James J. Challen, III
Assistant District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN  38103

OPINION FILED: _____

AFFIRMED

JAMES C. BEASLEY, SR., SPECIAL JUDGE

# **O P I N I O N**

Under indictment for first-degree murder, the petitioner, Rodney E. Ayers, pled guilty to second-degree murder and received a sentence of forty (40) years in the Tennessee Department of Correction as a Range II multiple offender. On June 21, 1994, the petitioner filed a *pro se* petition for post-conviction relief. With the assistance of appointed counsel, an amended petition was filed. After an evidentiary hearing, the trial court filed a comprehensive findings of fact and conclusions of law denying relief and dismissing the petition.

Appealing the trial court's dismissal of his post-conviction petition, the petitioner raises three issues for our review. He contends that his trial counsel was ineffective, alleges that his plea of guilty was not knowingly and voluntarily entered, and claims that he was incorrectly sentenced as a Range II offender. After carefully considering the issues and reviewing the record, we affirm the lower court's findings.

Petitioner's claim of ineffective assistance is based on counsel's failure to: make the necessary trial preparations for his defense; properly confer with and advise petitioner about his case; properly investigate the case and interview witnesses; review discovery material with petitioner; interview the state's witnesses listed on the indictment and examine their statements; investigate and assert all available defenses; and investigate the victim. Petitioner further alleges that his trial counsel erroneously advised him that: he would get the electric chair if he went to trial; he "would be out" in five or six years if he took the forty-year guilty plea; five percent of the thirty-five percent as a Range II offender would be dropped once he was in the system; and, finally, there was no self-defense law in Tennessee.

At the hearing, the petitioner gave his version of the shooting. He stated that Charles Black, the victim, had robbed him on two prior occasions. He described the fatal encounter as follows:

> And so at that time when I saw him, you know it was kind of frightening to me cause I was thinking that, you know, maybe

2

he was going to try to do something else to me. So when I saw him he was coming at me, you know, and my partner named Chucky had give me a gun and they told me to watch out, and all I know is the gun went off and I shot him.

When asked by post-conviction counsel if the victim was armed, the petitioner responded:

He was going in his jacket like -- like he was fixing to come out with something but, like I said, at the time, someone told me -- they was hollering, "Watch out," you know, kind of spooked me and somehow I pulled the trigger.

The petitioner admitted that trial counsel had visited him three or four times at the jail. He said most of their discussions dealt with a "cop-out plea." When he asked about self-defense, his attorney told him there was no self-defense law in Tennessee.

Petitioner said he was not shown a copy of his indictment nor made aware that five fact witnesses were listed thereon. He responded, "Yes, sir," when asked by his post-conviction attorney:

If you had known that at least four of these five witnesses had given these statements and may have indicated that the victim was armed with a whiskey bottle or that they, in fact, didn't see what had occurred -- knowing what we know now about at least four of these individuals -- would that have made a difference in your decision to enter this guilty plea?

Petitioner introduced four of these statements during the evidentiary hearing. Katana Leverston who had accompanied petitioner to the scene of the shooting described the encounter as follows:

There was a lot of drinking and confusion going on, and the man that got killed had a bottle in his hand, and Chucky, Rod, other guys I don't know where drinking and picking with each [other]. I looked back and seen the man who got killed with a bottle and he was facing Rod, and him and Rod were arguing. Then I saw Rod walk to the car, and he was saying, "I'm gone [sic] shoot this m----- f-----. I ain't no boy. I'm tired of these m----- f-----s playing with me," and then hit [the] hood with his fist, and the hood popped up, and when he came up from under the hood, he had a gun in his hand. Then he closed the hood, and walked over to the man that got killed and they was arguing, the man had the bottle in hand and was gone [sic] hit Rod with it. Then Rod pulled the pistol up and told the man, "You better get on your knees and tell me you sorry," and the man told Rod, "Man, you need to put that gun away." The man

3

who got killed was off from the end of the car to about the driver side of the car, and then I heard the gun [go] off and saw some fire, and the man fell beside the car.

Jerrico Collins was in the car with Katana Leverston and his statement was substantially the same as hers, but added that Charles Black, the deceased, had turned and was walking away when the petitioner shot him.

Witness Nathan Lewis was at the scene and heard the shot, but did not see the shooting. The fourth witness, Sammie Bowman, said he heard a shot and saw Charles Black fall. He said Charles Black robbed people. Before the shooting, the witness said Black was patting the pockets of "the dude." He heard "the dude" say, "[M]an, don't be patting on my pocket like that. Man you gonna have to apologize to me."

Petitioner further testified that he was told by Mr. Hall that if he went to trial he would receive either the death penalty or life in prison. He denied any discussion about the possibility of being convicted on a lesser charge. As to the guilty plea sentence of forty years at thirty-five percent, the petitioner said he was told by attorney Hall that the thirty-five percent would drop by five percent once he entered the system and that he would be back on the street after five or six years.

Assistant Public Defender Trent Hall testified that he was appointed to represent the petitioner approximately one year prior to entry of the guilty plea. During that time, he obtained full discovery of the state's entire file, including statements of five witnesses, and furnished copies to the petitioner. Mr. Hall stated that he met with petitioner on eleven occasions and discussed possible defense strategy, including self-defense and accidental shooting. Attorney Hall denied telling petitioner that there was no self-defense law in Tennessee, but did advise that self-defense would be extremely weak in that the victim was shot in the back after petitioner reportedly told him, "Get on your knees and beg me not to shoot you." Counsel suggested a better defense would be accidental shooting based on the petitioner's statement to police.

4

Attorney Hall denied telling petitioner that if he was convicted of first-degree murder he could receive the electric chair, but informed him that his punishment would be life in prison. He said he also explained the range of punishment for the lesser grades of homicide. Counsel denied telling the petitioner that he would only have to serve five or six years or that the thirty-five percent required for a Range II offender would be reduced by five percent once he entered the system. The investigator for the public defender's office was unable to locate witnesses, Nathan Lewis and Sammie Bowman. Katana Leverston and Jerrico Collins refused to give the investigator a statement, but were interviewed by attorney Hall before trial. Tyrone Calvin gave the investigator a statement which was damaging to the defense.

Additionally, trial counsel testified that he had investigated the victim's background and found that he had been arrested fifteen times, including several arrests for assault.

In determining whether counsel provided effective assistance at trial, the Court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To succeed on a claim that his counsel was ineffective at trial, a petitioner bears the burden of showing that his counsel made errors so serious that he was not functioning as counsel as guaranteed under the Sixth Amendment and that the deficient representation prejudiced the petitioner, resulting in a failure to produce a reliable result. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). To satisfy the second prong, the petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

This two-part standard of measuring ineffective assistance of counsel also applies

5

to claims arising out of the plea process. Hill v. Lockart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). The prejudice requirement is modified so the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Furthermore, the petitioner has the burden of proving the allegations in his petition by a preponderance of the evidence, McBee v. State, 655 S.W.2d 191, 195 (Tenn. Crim. App. 1983), and the factual findings of the trial court are conclusive on appeal unless the evidence preponderates against the judgment. State v. Buford, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983).

In dismissing the petition, the trial court carefully examined every allegation of ineffectiveness and found each to be without merit. In effect, the court determined that the charges by petitioner had been met and refuted by the credited testimony of trial counsel. The court concluded that the petitioner had received effective assistance of counsel at trial.

Having reviewed the evidence presented, we conclude that it fully supports the findings of the trial court and, thus, the petitioner has failed to meet his burden of proof on this issue.

The petitioner next contends that his guilty plea was not entered voluntarily and knowingly in keeping with the mandates of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), and therefore must be set aside.

In Boykin, the United States Supreme Court required that a defendant be warned of his constitutional rights to trial by jury, to the right of confrontation, and to protection against self-incrimination as mandatory prerequisites to the finding that a guilty plea was "intelligent and voluntary." The Court further required an affirmative showing of such

6

warnings and admonished that such important constitutional rights could not be presumed from a silent record. Rounsaville v. Evatt, 733 S.W.2d 506 (Tenn. 1987). Therefore, unless there is an affirmative showing that the plea was knowing and voluntary, a guilty plea may be vacated upon collateral attack. Johnson v. State, 834 S.W.2d 922 (Tenn. 1992).

Mackey mandated advice by the trial judge about the consequences of a guilty plea that went beyond the requirements of Boykin. Any omissions not required in Boykin may be relied upon on direct appeal in appropriate cases, but have no validity in a post-conviction proceeding. State v. Prince, 781 S.W.2d 846 (Tenn. 1989).

Citing Rounsaville v. Evatt, supra, the petitioner claims that at no time did the trial judge or the defense attorney advise him of his constitutional right not to be a witness against himself or ascertain whether or not he fully understood the consequences of a waiver of that right. The post-conviction court found otherwise and, from our review of the record, we find ample support for those rulings.

During the guilty plea hearing, discussions between the trial judge and the petitioner included the following:

> Q. All right. You want to enter a plea of guilty and accept the negotiated settlement that your lawyer has worked out which is forty years in Department of Correction confinement?
>
> A. Yes, sir.
>
> Q. You want to do that?
>
> A. Yes, sir.
>
> Q. All right. Are you doing so voluntarily?
>
> A. Yes, sir.
>
> Q. You know what voluntarily means, don't you?
>
> A. (No Verbal Response)
>
> Q. That you're doing it on your own. Nobody's forcing you to do it.

A. Yes, sir.

Q. How old are you?

A. Eighteen.

Q. All right. You satisfied with your lawyer's services?

A. Yes, sir.

Q. Did he tell you you can have a trial before a judge or a jury?

A. Yes, sir.

Q. Did he tell you if you went to trial you could not be compelled to testify?

A. Yes, sir.

Q. Sir?

A. Yes, sir.

Q. Did he tell you and do you understand that if you went to trial through your lawyer you could cross-examine the witnesses?

A. Yes, sir.

In addition to the above, the transcript shows that petitioner was advised of additional rights as required by State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). Also at the post-conviction hearing, counsel testified that the petitioner had stated that he did not want a trial but, if his case went to trial, he probably would not testify. This record fully supports the findings of the court below that the petitioner was well advised and aware of his constitutional rights and that he freely, voluntarily, understandingly, and knowingly waived those rights and entered his guilty plea. We find no basis on which to disturb those findings.

In his final issue, the petitioner contends that he was incorrectly sentenced as a Range II offender. He claims that since he had no prior criminal record he is not a multiple offender as defined in Tenn. Code Ann. § 40-35-106 and therefore should have been sentenced as a Range I offender.

8

In State v. Mahler, 735 S.W.2d 226 (Tenn. 1987), our Supreme Court ruled that an accused could agree as a part of a plea bargain agreement to be sentenced as a Range II offender although meeting the criteria for Range I, as long as the sentence fell within statutory limits fixed for the offense.

The range of punishment for murder in the second degree is not less than fifteen (15) nor more than sixty (60) years. The forty (40) year sentence agreed to by the petitioner is clearly within the statutory limits and thus is not illegal. The record reflects that this is the only offer made by the District Attorney General and the proof shows that, prior to entering the guilty plea, the petitioner was advised by counsel that he would be sentenced outside and above his statutory classification. While we have examined this complaint and found that it has no merit, we note that the issue addressing the sentencing range of the petitioner's sentence is not cognizable in post-conviction proceedings. Tenn. Code Ann. § 40-35-401; Brooks v. State, 756 S.W.2d 288 (Tenn. Crim. App. 1988).

For the reasons stated, the judgment of the trial court, dismissing the petition for post-conviction relief, is affirmed.

_____
JAMES C. BEASLEY, SR., SPECIAL JUDGE

9

CONCUR:

_____
JOHN H. PEAY, JUDGE

_____
JOE G. RILEY, JUDGE

JOHN H. PEAY, JUDGE