IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 4, 2003

## CHAD A. HODGE v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Montgomery County
Nos. 40000714 and 40695     John H. Gasaway, III, Judge**

---

### No. M2002-02043-CCA-R3-CD - Filed July 18, 2003

---

The petitioner, Chad A. Hodge, filed a petition for post-conviction relief alleging that his guilty plea to second degree murder was not knowing and voluntary. Following an evidentiary hearing, the post-conviction court denied relief and the petitioner timely appealed. Upon review of the record and the parties' briefs, we conclude the evidence does not preponderate against the post-conviction court's findings. Accordingly, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Chad A. Hodge.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and C. Daniel Brollier, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Factual Background

On November 21, 2000, the petitioner pled guilty to two counts of aggravated robbery and one count of second degree murder. Pursuant to his plea agreement, he received an effective sentence of thirty years incarceration in the Tennessee Department of Correction. The petitioner was sentenced to twenty years incarceration for the second degree murder conviction, which sentence was to be served at one hundred percent. Additionally, the petitioner received a ten-year sentence for each aggravated robbery conviction, to be served at thirty percent. The trial court ordered that the aggravated robbery convictions be served concurrently with each other, but consecutive to the murder conviction.

On March 5, 2001, the petitioner filed a pro se petition for post-conviction relief, alleging that his counsel was ineffective and that his guilty plea to second degree murder was not knowing and voluntary. In support of his claims, the petitioner alleged that counsel failed to fully investigate all possible defenses; interview all possible witnesses; explain to the petitioner the nature of the charges against him and the consequences of a guilty plea; explain the punishment for the offense; investigate the petitioner's mental state; and adequately explain the manner of the sentence imposed. The petitioner claimed that because of these failures he was unable to intelligently and knowingly make informed decisions regarding the charges against him. The post-conviction court ordered the appointment of legal counsel and thereafter conducted an evidentiary hearing.

The post-conviction hearing began on February 6, 2002. The petitioner requested and was granted a continuance in order to enable him to review the transcript of the guilty plea hearing. On March 14, 2002, the post-conviction hearing resumed. At the hearing, the petitioner confirmed that he had read the transcript of the guilty plea hearing in detail and had reviewed the transcript with his attorney. The petitioner testified that the transcript accurately reflected what he had said at the guilty plea hearing. The petitioner admitted signing the plea agreement, but he denied having ever read the agreement. The petitioner stated that he came into court to plead guilty to the aggravated robbery charges, but not to murder. The petitioner averred that "my attorney betrayed me. That's what happened. . . . For murder I wanted to take it to trial, and my attorney knew that."

The petitioner testified he had a fifth grade education at the time of the guilty plea hearing, but since his incarceration, he had received his general equivalency diploma (GED). When questioned about his affirmative response to the court's question, "[d]o you understand that with this paperwork that you've handed up here today that you are offering to plead guilty in count two to second degree murder," the petitioner responded that he had not understood that he was pleading guilty to second degree murder. The petitioner stated that when the trial court explained his sentence, he understood that he was receiving ten years for the aggravated robberies and that the total sentence imposed was thirty years. He stated that he did not know that he could stop the proceedings if he disagreed with the announced plea.

Initially, the petitioner testified that he had met with counsel only once. Later in his testimony, the petitioner recounted meeting with counsel several other times, both while in jail and while out on bond. He stated he received a copy of discovery while in jail. When asked if he ever discussed the discovery information with counsel, the petitioner responded, "Not really."

The petitioner also claimed that counsel did not contact potential defense witnesses and failed to adequately prepare a defense. The petitioner testified that counsel should have contacted Ricky Merriwether, Tracy Merriwether, and Romania Gadson to testify on his behalf. Moreover, the petitioner asserted that counsel did not adequately explain the charges against him. The petitioner testified that he never understood that he was charged with murder. Rather, the petitioner testified that he thought he had been charged with "criminal homicide." Further, the petitioner testified that he never got a copy of the documents he signed in court. He also contended that counsel coerced him into signing papers that he had not read even though counsel was aware

that the petitioner wanted to proceed to trial on the murder charge. Additionally, although admitting that counsel explained sentencing ranges, the petitioner contended that counsel did not explain, nor did the petitioner understand, what was meant by "one hundred percent" service of his sentence. Finally, the petitioner contended that counsel failed to obtain a mental evaluation or assessment of the petitioner. However, at the post-conviction hearing the petitioner conceded that counsel had asked if he had ever had any mental problems. The petitioner asserted, "I [do not] have any mental problems. I'm straight."

The petitioner acknowledged his understanding that if he obtained post-conviction relief, he would be at "square one" and could be tried on the original charge of first degree murder. He also understood that he could receive a life sentence if he were tried and convicted of first degree murder.

On cross-examination, the petitioner stated that he could read "somewhat" at the time of the plea agreement. He admitted that counsel had conducted an investigation of the petitioner's case and that counsel had also hired an investigator. When shown the plea agreement, the petitioner acknowledged that he signed the agreement and that it clearly set forth the charges to which he pled guilty. The petitioner testified that counsel explained legal defenses and the State's evidence against him. The petitioner also acknowledged that counsel announced in court that the petitioner always denied being the shooter in the offense.

When questioned on cross-examination about possible witnesses counsel had failed to contact, the petitioner admitted that Tracy Merriwether was dead at the time of the guilty plea hearing and that both Ricky Merriwether and Romaina Gadson were in the penitentiary. The petitioner conceded that counsel knew of these witnesses and had their statements. Counsel had also talked with the petitioner about these witnesses and their possible testimony.

Counsel testified that he had been in practice for ten years at the time he was appointed to represent the petitioner. Counsel further testified that shortly after his appointment, he hired an investigator. The investigator interviewed Ricky Merriwether and also spoke with Romaina Gadson concerning the shooting. Counsel recalled that the State had listed Gadson as a witness against the petitioner. Counsel testified that he sent copies of discovery to the petitioner and met with him to discuss the information. They also discussed potential witnesses.

Counsel recalled that he recommended to the petitioner that he plead guilty. Moreover, counsel related that he was always satisfied that the petitioner knew and understood the circumstances relating to his case and his plea. Specifically, counsel concluded that "[i]t was my opinion at that time; it was my opinion when we signed the forms; it was my opinion when we went over exhibit two as well as the petition to plead guilty that he understood exactly what he was doing and why he was doing it." Counsel further testified that the petitioner never told counsel that he was upset about his plea to second degree murder.

At the conclusion of the hearing, the post-conviction court dismissed the petitioner's claims. On appeal, the petitioner contends that counsel was ineffective and that his guilty plea to second degree murder was not knowing and voluntary.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

In determining whether a petitioner's guilty plea was knowing and voluntary, this court must look at the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). "This court is bound by the post-conviction court's findings unless the evidence preponderates otherwise." Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self incrimination, the right to confront witnesses, and the right to a trial by jury. See Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Therefore, in order to comply with constitutional requirements, a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. See Boykin, 395 U.S. at 244, 89 S. Ct. at 1712.

In State v. Mackey, 553 S.W.2d 337, 341 (Tenn. 1977), our supreme court set out the procedure trial courts should follow when accepting a guilty plea. Prior to accepting the guilty plea, the trial court must address the defendant personally in open court, inform the defendant of the consequences of the guilty plea, and determine whether the defendant understands those consequences. Id.; see also Tenn. R. Crim. P. 11(c). A verbatim record of the guilty plea proceedings must be made and must include, without limitation, "(a) the court's advice to the defendant, (b) the inquiry into the voluntariness of the plea including any plea agreement and into defendant's understanding of the consequences of his entering a plea of guilty, and (c) the inquiry into the accuracy of a guilty plea." Id.

In determining whether the petitioner's guilty plea was knowing and voluntary, this court looks to the following factors:

> The relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

The post-conviction court reviewed the record including the transcript of the guilty plea hearing. The plea transcript reflects that the trial court explained to the petitioner his constitutional rights and the consequences of pleading guilty. The petitioner advised the court that he understood the charges against him, was entering a voluntary plea, and was aware of the constitutional rights that were being relinquished. The trial court further explained the sentence that the petitioner would receive, including that the petitioner would be required to serve one hundred percent of the second degree murder conviction in confinement.

At the post-conviction hearing the post-conviction court considered the evidence presented by the petitioner and by the State. Accrediting the testimony of counsel and determining that there was "no legal basis to grant the relief [the petitioner] seeks," the post-conviction court stated:

> [The petitioner's] contention today that he did not know and understand what he was doing at the settlement presentation is simply unbelievable in light of the colloquy that took place between Mr. Hodge and the Court, all of which is embodied in exhibit one to this proceeding.
>
> Considering all of the testimony the [petitioner] has failed to show by any standard that he did not understand the charges that he faced, the possible consequences if he were convicted of the offenses, and the benefit he obtained as a result of the plea agreement and the exact sentences and the confinement time required to satisfy those sentences.
>
> Mr. Hodge simply doesn't like [what] he bargained for and he wants to start over. He can't do that just because he wants to, and there's no legal basis to grant the relief he seeks through his petition for postconviction relief.

After our examination of the record, we conclude that the evidence does not preponderate against this determination.

### III.  Conclusion

Accordingly, we affirm the judgment of the post-conviction court.


_____

NORMA McGEE OGLE, JUDGE