IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 16, 2003

## JERRY LYNN WRIGHT v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Knox County**
**No. 74172      Ray L. Jenkins, Judge**

_____

**No. E2003-01216-CCA-R3-PC**
**January 27, 2004**
_____

The petitioner, Jerry Lynn Wright, appeals the dismissal of his petition for post-conviction relief, alleging that the post-conviction court erred in finding that his guilty plea was knowing and voluntary and that he received effective assistance of counsel. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOE G. RILEY and THOMAS T. WOODALL, JJ., joined.

Albert J. Newman, Jr., Knoxville, Tennessee, for the appellant, Jerry Lynn Wright.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Zane Scarlett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On February 20, 2001, the petitioner pled guilty in the Knox County Criminal Court to one count of second degree murder. The trial court imposed the recommended sentence of twenty-one years in the Tennessee Department of Correction, to be served at one hundred percent. Subsequently, the petitioner filed for post-conviction relief alleging that his plea was not knowing and voluntary and that he received ineffective assistance of counsel.

At the post-conviction hearing, the petitioner testified that he was "bipolar, manic-depressive, . . . and needed medication." He contended that his attorney was aware that he had mental problems, but failed to have him undergo a mental evaluation. Additionally, the petitioner testified that he

agreed to plead guilty because he thought his sentence was to be served at thirty percent; however, he subsequently learned that it was to be served at one hundred percent. The petitioner alleged that if he had known that he was required to serve one hundred percent of his sentence, he would have gone to trial.

The petitioner testified that he was acting in self-defense when he killed the victim. Because he did not believe his attorney was prepared for trial, the petitioner agreed to plead guilty and accept a twenty-one year sentence. He stated that he told his attorney that he had a mental problem. He alleged that he took his medical record and medications to his attorney, but the issue was never raised. Moreover, he did not think that his attorney interviewed all the witnesses.

On cross-examination, the petitioner acknowledged that he was not taking medication at the time of the offense. However, he maintained that he advised his attorney of his mental problem. The petitioner alleged that his attorney pressured him to sign the plea agreement, telling the petitioner that "it was either the plea bargain or a life sentence." The petitioner conceded that he had thirteen prior convictions. The petitioner admitted that the trial court told him that his sentence was to be served at one hundred percent; however, he testified that "I felt that my case would be different if I'd went to trial; and if I'd had a proper defense, I would have went to trial."

The petitioner's trial counsel testified that he had practiced criminal law since 1986. After he was appointed to represent the petitioner, he and his investigator interviewed all the witnesses. Most of the witnesses supported the State's version of events. Trial counsel stated that one witness indicated that the petitioner backed the victim into a corner and "lunged into him" with a knife. Trial counsel advised the petitioner of the problems with his claim of self-defense and explained that the petitioner was the only witness who supported the claim. Because of the petitioner's numerous prior convictions, trial counsel was concerned about the petitioner testifying. Trial counsel felt that there was no "viable" defense available. He advised the petitioner that he was likely to be convicted of first degree murder and sentenced to life imprisonment. Trial counsel maintained that he did not pressure the petitioner to accept the plea agreement, and the decision to plead guilty "was entirely [the petitioner's] decision."

Trial counsel testified that he never advised the petitioner that he would be required to serve only thirty percent of his sentence. He "never had any doubt" that the petitioner knew he was pleading guilty and understood the conditions of his sentence. Trial counsel specifically recalled a conversation wherein the petitioner expressed concern that he would be required to serve a minimum of eighty-five percent of his sentence. The petitioner advised trial counsel that "he would be near 60 years old or around 60 when he got out, and he'd be an old man." Ultimately, the petitioner decided to accept the plea agreement.

Trial counsel did not recall the petitioner mentioning that he had a mental problem. Trial counsel testified that if he had been aware of the petitioner's claim, he would have had the petitioner evaluated. Trial counsel stated, "as a general practice, I tend to err on the side of caution. If there's ever a question about mental capacity, I–I know there's funding available to get a psychiatrist or

psychologist, or both, to conduct an evaluation to determine competency and . . . we never thought that was an issue."

At the conclusion of the post-conviction hearing, the post-conviction court took the matter under advisement in order to review the transcript of the guilty plea hearing before reaching a decision. Thereafter, the post-conviction court issued written findings, accrediting the testimony of trial counsel and finding that counsel was not ineffective. Additionally, the post-conviction court noted that the transcript of the guilty plea hearing confirmed that the petitioner was fully advised of his constitutional rights.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Henley, 960 S.W.2d at 578.

In determining whether a petitioner's guilty plea was knowing and voluntary, this court must look at the totality of the circumstances. State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). "This court is bound by the post-conviction court's findings unless the evidence preponderates otherwise." Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Therefore, in order to comply with constitutional requirements, a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea. Boykin, 395 U.S. at 243-44, 89 S. Ct. at 1712.

In State v. Mackey, 553 S.W.2d 337, 341 (Tenn. 1977), superseded on other grounds by Tenn. R. Crim. App. 37(b) and Tenn. R. App. P. 3(b), our supreme court set out the procedure trial courts should follow when accepting a guilty plea. Prior to accepting the guilty plea, the trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those consequences. See Id.; see also Tenn. R. Crim. P. 11(c). A verbatim record of

the guilty plea must be made and must include, without limitation, "(a) the court's advice to the defendant, (b) the inquiry into the voluntariness of the plea including any plea agreement and into the defendant's understanding of the consequences of his entering a plea of guilty, and (c) the inquiry into the accuracy of a guilty plea." Mackey, 553 S.W.2d at 341.

In determining whether the petitioner's guilty plea was knowing and voluntary, this court looks to the following factors:

> The relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

As we have noted, the post-conviction court considered the evidence presented by the petitioner and the State. The post-conviction court accredited the testimony of trial counsel, finding that trial counsel was not ineffective. Further, the transcript of the guilty plea hearing reflects that at the beginning of the hearing, the State advised the trial court that the recommended sentence was twenty-one years, to be served at one hundred percent. Prior to accepting the guilty plea, the trial court advised the petitioner of the consequences of pleading guilty and determined that the petitioner understood those consequences. The trial court questioned the petitioner regarding the voluntariness of his guilty plea and clearly advised the petitioner that he was "sentenced under the statute as a 100 percent prisoner, with the possibility of a 15-percent diminution in sentence on compliance with the conditions of that statute."

Upon review of the record, we conclude that the evidence does not preponderate against the determination of the post-conviction court.

### III.  Conclusion

Accordingly, the judgment of the post-conviction court is affirmed.

_____
NORMA McGEE OGLE, JUDGE

-4-