# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 27, 2012 Session

## STATE OF TENNESSEE v. LARRY A. WADE

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 273614     Don W. Poole, Judge**

---

**No. E2011-01538-CCA-R3-CD - Filed September 28, 2012**

---

Defendant, Larry Wade, was indicted by the Hamilton County Grand Jury for premeditated murder, felony murder, and especially aggravated robbery. Following a pretrial hearing on Defendant's motion to suppress, which the trial court took under advisement, Defendant entered a guilty plea to second degree murder on the same day as the suppression hearing. Defendant subsequently filed a motion to withdraw his guilty plea, which the trial court denied after two separate hearings. On appeal, Defendant asserts that the trial court's failure to rule on his motion to suppress prior to accepting his guilty plea violated his due process rights, and consequently, Defendant's guilty plea was unknowingly and involuntarily entered, and Defendant asserts that it was a manifest injustice to deny Defendant's motion to withdraw his guilty plea. After a careful review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and CAMILLE R. MCMULLEN, J., joined.

Lanni Marchant and Lee Davis, Chattanooga, Tennessee, for the appellant, Larry Wade.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William H. Cox, III, District Attorney General; and Neal Pinkston, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

*Hearing on Defendant's motion to suppress and plea submission hearing*

On September 20, 2010, the trial court conducted a hearing on Defendant's motion to suppress evidence. Investigator James Tate, of the major crimes division of the Chattanooga Police Department, testified that in June, 2009, he and Investigator Mercado interviewed Defendant at the Jefferson County Jail. Investigator Tate testified that he asked Defendant where he was from, and Defendant stated that he was from Nashville. Investigator Tate asked Defendant if he had ever been to Chattanooga, and Defendant stated that "it had been a while." Defendant stated that he had "only been through [Chattanooga]" and that he had "never stopped." Investigator Tate testified that Defendant then invoked his right to an attorney. Neither investigator asked Defendant any more questions.

Defendant testified that when he entered the interview room at the Jefferson County Jail, Investigators Tate and Mercado were there. They asked him his name and he told them. Defendant testified that he then asked for his attorney, and one of the detectives asked Defendant why he wanted his attorney and stated that he had not yet asked him any questions. Defendant testified that he was not handcuffed but that the interview room was locked. He testified that he "tried to leave," and the detectives "wouldn't let [him] leave."

At the conclusion of the hearing, the trial court took the matter under advisement and stated that it would issue a written order on the motion to suppress. The trial court acknowledged that the disputed issue was whether Investigator Tate's question to Defendant about having been to Chattanooga was "background" or interrogation.

On the same day as the suppression hearing, Defendant entered a guilty plea in count 1 of the indictment to the lesser-included offense of second degree murder and was sentenced to serve 15 years in the TDOC as a range I offender. At the guilty plea hearing, upon the State's motion, counts 2 and 3 of the indictment, charging Defendant with felony murder and aggravated robbery, were dismissed.

We will summarize the facts underlying Defendant's conviction, as stated by the prosecutor at the plea submission hearing, as follows. On August 10, 2006, at approximately 8:30 or 9:00 a.m., Reginald White arrived at his residence on Fourth Avenue in Chattanooga and found his roommate Leslie Washington, Jr., shot to death. The victim was lying near the doorway to his bedroom with one gunshot wound to his right thigh and one gunshot wound to his head. Mr. White contacted the police. Police officers found an open window and a box fan and window screen lying below the window. Police officers collected latent prints from the box fan. The house was "ransacked."

Sometime in late 2008, Eliashanti Dean, who was serving a federal prison sentence for drugs and firearm charges, told police that he and Defendant, whom he knew as "Lako," had been friends. The prosecutor stated that if called to testify at Defendant's trial, Mr. Dean would testify that

> On this particular date, he would testify that he – some other individuals, Norman Ricks, you remember the Court recalls there was a case in here about Norman Ricks, Mr. Wade, also known as Lako or L.A., and Tag Loc, this Antonio Radley, who also is from Nashville, were at a Motel 6 on Lee Highway there at the exit on I-75, Lee Highway, Bonny Oaks exit, and indicated that a phone call between the defendant and Norman Ricks about going to hit a lick was about a robbery.

> They leave Mr. Wade with what he recalls is a 9mm, which there's some discrepancy in that, and Tag Loc with some type of revolver. They come back later, Mr. Wade's in a different state of mind than he was, there's conversations. He would testify that Mr. Wade later admits to having to shoot someone in the house.

Defendant's fingerprints were taken while he was incarcerated at the Cocke County Jail and compared to the latent prints taken from the crime scene. Defendant's palm print matched the latent print taken from the box fan.

The trial court explained to Defendant the charges against him as well as the lesser-included offenses of those charges and the potential ranges of punishment. The trial court also explained the rights that Defendant would waive by entering a guilty plea. Defendant stated that he had obtained a GED and completed two years of college. Defendant acknowledged that he understood his rights, that he understood that he would relinquish those rights by pleading guilty, that he was satisfied with his attorney's services, and that he was entering his plea freely and voluntarily. The trial court accepted Defendant's guilty plea, determining that he was competent to enter the plea and that he was "entering it freely, voluntarily, understandingly, intelligently, and that there [wa]s a factual [ ] basis for the plea."

*Hearings on Defendant's motion to withdraw his guilty plea*

On December 2, 2010, at a hearing on Defendant's motion to withdraw his guilty plea, Xaviera Price, Defendant's girlfriend, testified that Defendant sent her a motion to withdraw his guilty plea and a letter instructing her to file it no later than October 20, 2010. The envelope was postmarked on October 15, 2010, and Ms. Price testified that she received it

on October 19, 2010. On the following day, she attempted to file the motion at the criminal court clerk's office, but she was not allowed to file it and she was told that only Defendant or his attorney could file something on Defendant's behalf. She spoke to Defendant by phone that evening, and Defendant again instructed her to file the motion. She attempted to file the motion again on the following day, October 21, 2010, and was allowed to file it.

Defendant testified that he mailed a letter and a *pro se* motion to withdraw his guilty plea to the clerk's office and requested that the motion be filed at the same time he mailed the letter and motion to Ms. Price. Defendant was not represented by counsel at that time. Defendant testified that his guilty plea should be set aside because he "was misinformed by members of [his] defense team on the suppression hearing being denied." Defendant testified that he was told by his private investigator that the trial judge "rarely grants suppressions." Defendant "felt backed in a corner," and he pleaded guilty "off of pure fear." Defendant testified that he was also told by the private investigator that if he had newly discovered evidence, it would be grounds to withdraw his guilty plea; however, he testified that his trial counsel advised him that it was not possible to withdraw his guilty plea on the basis of newly discovered evidence.

Defendant acknowledged on cross-examination that he had pleaded guilty in other cases before his guilty plea in this case. He also testified on cross-examination that his trial counsel did not tell him that the motion to suppress was granted or denied. Defendant testified that he understood the charges against him and the potential sentences at the time he entered his guilty plea. He testified that he did not read the waiver of rights form that he signed prior to entering his guilty plea and that he "may have" discussed his rights with trial counsel. Defendant testified that he remembered being questioned by the court and stating that he understood his rights and the plea agreement; however, he testified that he accepted the plea offer "against [his] will."

The trial court took the matter under advisement. Defendant was subsequently appointed new counsel and counsel filed another motion to withdraw Defendant's guilty plea, upon which a hearing was held on June 8, 2011. At that hearing, Defendant testified that the elements of the crime to which he pled guilty were never explained to him and that he "thought [he] pled guilty to felony murder in the second degree." Defendant also testified that he was not afforded competent counsel. He testified that his original trial counsel "told [him] to go ahead and take th[e] plea [ ] and [that] later [he] could withdraw the plea and proceed to trial." Defendant testified that counsel advised him that "it would be better to have new evidence, but he just basically had [Defendant] under the assumption that [he] could just file a motion to withdraw the plea and the plea would be withdrawn." Defendant testified that counsel later explained that a motion to withdraw his guilty plea must be filed within 30 days. Defendant testified that he did not have a preliminary hearing. He testified

that trial counsel failed to obtain exculpatory evidence; that he did not provide Defendant with discovery materials; that he failed to properly investigate and interview witnesses; and that he did not fully discuss possible trial strategies with him. Defendant testified that trial counsel told him on the day of the hearing on his motion to suppress that the trial judge rarely grants suppression motions, and Defendant testified that "it was [his] understanding that [the motion to suppress] was denied." Finally, Defendant testified that there was no factual basis for his guilty plea.

On cross-examination, Defendant acknowledged that trial counsel filed several motions on his behalf. He also testified that he saw discovery materials. He acknowledged that the plea agreement stated the offenses for which he was charged and the offense to which he pled guilty and the sentence he received. He testified that he signed the plea agreement, but he did not read it. He testified that trial counsel failed to contact or interview alibi witnesses and that he told trial counsel about the witnesses in February, 2010, prior to entering his guilty plea. Defendant attempted to contact those witnesses but was unable to establish contact until after his guilty plea was entered.

In a written order denying Defendant's motion to withdraw his guilty plea, the trial court found that Defendant's *pro se* motion to withdraw his guilty plea was timely filed because it was postmarked before the judgment became final, indicating that Defendant had delivered the motion to an appropriate individual at the correctional facility where Defendant was serving his sentence.

The trial court concluded that Defendant's guilty plea was voluntarily and intelligently entered. The court found that Defendant's testimony was the only evidence that the court's denial of Defendant's motion to suppress was one of the premises of his plea, and the court found that Defendant was not a credible witness and that his testimony was contradictory. The court found that Defendant's testimony that he understood that his plea could be withdrawn upon the discovery of new evidence, another premise of his guilty plea, was also not credible. The court also found that there was no credible evidence that Defendant's trial counsel was ineffective. Citing inconsistencies in Defendant's testimony, the court stated

> Furthermore, the defendant's testimony about discovery and the advice about withdrawal of the plea was contradictory. The defendant, by one of his accounts, did see discovery and the record reflects that, in addition to the motion to suppress, counsel did file requests for discovery and exculpatory evidence, a second request for discovery or a motion to compel disclosure, several motions *in limine*, and notices of intent to call one or more experts. In any event, it is clear that the defendant was aware

of the unfavorable evidence and any favorable evidence or lack of favorable evidence.

As for the erroneous advice about withdrawal of the plea, at the December hearing, the defendant identified the defense investigator as the source. At the June hearing, however, he identified counsel as the source. Although counsel did not testify, considering the lack of evidence to support some of the defendant's allegations regarding the omissions of counsel, the evidence in the record belying his testimony in support of other such allegations, and his self-contradictory testimony regarding the remaining such allegations, the Court finds no manifest injustice in this respect.

*Analysis*

Defendant asserts that: 1) the trial court erred in failing to dispose of his motion to suppress prior to accepting his guilty plea; 2) the trial court erred in finding that his plea was knowing and voluntary; and 3) the withdrawal of his guilty plea is necessary to prevent a manifest injustice.

The withdrawal of a plea of guilty is governed by Rule 32(f) of the Rules of Criminal Procedure. This rule provides that "[a]fter sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice." Tenn. R. Crim. P. 32(f)(2). The term "manifest injustice" is not defined either in the rule or in those cases in which the rule has been applied. Trial courts and appellate courts must determine whether manifest injustice exists on a case by case basis. *See State v. Crowe*, 168 S.W.3d 731, 741–42 (Tenn. 2005) (recognizing absence of definition for manifest injustice and citing examples of circumstances warranting withdrawal); *State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). The defendant has the burden of establishing that a plea of guilty should be withdrawn to prevent manifest injustice. *Turner*, 919 S.W.2d at 355.

To determine whether the defendant should be permitted to withdraw his guilty plea to correct a manifest injustice, a court must scrutinize carefully the circumstances under which the trial court accepted the plea. An analysis of the plea submission process under Tennessee Rule of Criminal Procedure 11(b) facilitates an inquiry into the existence of manifest injustice. *See generally State v. McClintock*, 732 S.W.2d 268 (Tenn. 1987) (for rules concerning acceptance of guilty pleas); *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977) *superseded on other grounds by rule as stated in State v. Wilson*, 31 S.W.3d 189, 193 (Tenn. 2000). Tennessee courts have allowed the withdrawal of guilty pleas to prevent manifest injustice when,

(1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily"; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

*Crowe*, 168 S.W.3d at 742 (footnotes omitted). A guilty plea, however, should not be withdrawn merely because the defendant has had a change of heart. *Id*. at 743.

The transcript of the guilty plea submission hearing makes clear that Defendant was aware of the nature of the charge against him, the potential punishment, and the constitutional rights that would be waived by virtue of his pleading guilty. Defendant testified at the plea submission hearing that he read the plea agreement and discussed it fully with his counsel and that he was satisfied with counsel's representation of him. The plea agreement states:

> 22. I understand that, by pleading guilty, I also waive and give up any complaints or claims that I may have concerning any of the following matters: (a) *the procedures and methods used in investigating the case, questioning me, or obtaining a confession or statement from me*; (b) any procedures used to identify me, including any line-up in which I appeared; (c) any procedures used in searching my property or seizing any evidence against me; and (d) preliminary examinations, grand jury proceedings, and a speedy trial.

Defendant later testified that he did not read the plea agreement. This is just one of several inconsistencies in Defendant's testimony throughout these proceedings. He testified at the first hearing on his motion to withdraw his guilty plea that the private investigator advised him that his motion to suppress had been denied, and at the second hearing on the motion, Defendant testified that it was his trial counsel who told him the same. The trial court noted other inconsistencies and found Defendant's testimony not to be credible.

Defendant asserts that "the record is silent on the issue of the Defendant's pending motion to suppress at the time of his plea." Our review of the plea submission transcript confirms Defendant's assertion that neither the trial court nor the parties recognized on the record that a ruling on the motion to suppress was pending, and Defendant did not specifically waive any pending motions before entering his guilty plea. However, the

-7-

transcript of the suppression hearing held earlier that same day shows that the trial court did not make a ruling on the motion and stated, "I'm going to issue a written opinion concerning the motion to suppress." Regardless, as the trial court noted, the only evidence that Defendant entered his guilty plea on the assumption that the motion to suppress had been denied was the Defendant's own testimony, which the trial court found was not credible. This finding by the trial court was not inconsistent with the evidence. Defendant's testimony regarding his belief as to the disposition of the motion to suppress is ambiguous. Defendant did not specifically state that he was told that the motion to suppress was denied. He testified at the December 2, 2010 hearing,

> [DEFENDANT]: I was just told that [the trial court] rarely grants suppressions, so I just took that to mean that I didn't see myself being very special.
>
> [Defendant's counsel]: Were you specifically told he denied it?
>
> [Defendant]: That's what I left the conversation with.
>
> . . . .
>
> [Defendant's counsel]: What was your understanding?
>
> [Defendant]: My understanding was that my suppression hearing was denied.
>
> [Defendant's counsel]: Okay. And where did you get that from?
>
> [Defendant]: Through my private investigator.

Defendant also testified on cross-examination at that hearing that he did not remember the trial court granting *or* denying his motion to suppress. Subsequently, Defendant testified on direct examination at the June 8, 2011 hearing as follows:

> [Defendant's counsel]: Now, the day that you entered the plea was the same day that you had the motion to suppress hearing, is that correct?
>
> [Defendant]: Yes, sir.
>
> [Defendant's counsel]: And at the close of that, was there a ruling? Do you know if there was a ruling in reference to that motion?

[Defendant]: No, at the time, my understanding was it was denied.

[Defendant's counsel]: It was your understanding it was denied?

[Defendant]: Yeah.

[Defendant's counsel]: How did you come about with that understanding?

[Defendant]: I was told that [the trial judge] rarely grants suppression motions and whatnot.

The record does not establish that Defendant's decision to plead guilty was based, in part, on the false information that the trial court denied his motion to suppress. We conclude that Defendant's plea was voluntarily and knowingly entered.

We next address Defendant's assertion that his due process rights were violated by the trial court's failure to rule on his motion to suppress prior to accepting his guilty plea. In support of this contention, Defendant offers only one case, which the State distinguishes. Defendant cites *U.S. v. Payner*, 572 F.2d 144 (6th Cir. 1978), in which a hearing was held on a motion to suppress prior to trial; however, the trial court did not make a ruling on the motion prior to a trial on the merits. *Id.* at 145. By agreement between the parties, a jury was waived and the case was tried before the district court judge. After hearing all of the evidence, the district court granted the defendant's motion to suppress but did not make a decision on the merits of the case. The government appealed the court's ruling on the motion to suppress. *Id.* The Sixth Circuit Court of Appeals dismissed the appeal, holding that the government had no statutory right to appeal because it was taken after the hearing of evidence on the merits. The Circuit Court held that the government would have preserved its right to appeal if the district court had made a ruling on the suppression issue prior to beginning a trial on the merits. The Circuit Court explained that "the procedure followed in [that] case should not be encouraged or condoned." *Id.* at 145-46.

We agree with the State that the facts of this case are distinguishable from those in *Payner*. *Payner* does not hold, as Defendant suggests, that a trial court must make a ruling on a pending motion to suppress prior to the entry of a guilty plea. Defendant offers no other authority which states that all pending motions must be decided before a valid guilty plea may be entered. Defendant argues that the trial court should have advised him of its ruling on his motion to suppress, and "Defendant should have been given the opportunity to expressly waive his right as to his motion to suppress." We have already noted in this opinion that Defendant did expressly waive any suppression issues by signing the plea agreement. Whether Defendant relied on false information that his motion to suppress was

denied and his decision to plead guilty was based on that information is an issue of credibility, and we have already stated that the record supports the trial court's determination that Defendant lacked credibility on that issue.

We conclude that Defendant has failed to establish that withdrawal of his guilty plea is necessary to correct a manifest injustice. Defendant is not entitled to relief in this appeal.

## CONCLUSION

The judgment of the trial court is affirmed.

_____

THOMAS T. WOODALL, JUDGE