IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs August 15, 2017

**STEVEN TYLER NABI v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Robertson County**
**Nos. 74CC2-2013-630, 74CC2-2013-635     William R. Goodman, III, Judge**

_____

**No. M2017-00041-CCA-R3-PC**

_____

Petitioner, Steven Tyler Nabi, appeals the denial of his petition for post-conviction relief. On appeal, Petitioner contends that his trial counsel was ineffective for failing to adequately prepare for trial, failing to properly cross-examine the State's witnesses at trial, and failing to pursue the issues of the State's lack of DNA evidence and defense of a third party. Petitioner entered guilty pleas following the State's presentation of its evidence at trial. Petitioner contends that his guilty pleas were unknowingly and involuntarily entered because he was under the influence of marijuana at the time of the plea acceptance hearing, the trial court failed to properly advise him under Rule 11 of the Tennessee Rules of Criminal Procedure, and Petitioner did not understand that his sentence would be served at 85 percent. Having reviewed the entire record and the briefs of the parties, we reverse the judgment of the post-conviction court and remand this case for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Reversed and Remanded**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

William F. Kroeger, Springfield, Tennessee, for the appellant, Steven Tyler Nabi.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; John Wesley Carney, Jr., District Attorney General; and Jason White, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Procedural history*

Petitioner was indicted by the Robertson County Grand Jury for one count of aggravated robbery in case number 2013-CR-630 and one count each of aggravated robbery, conspiracy to commit aggravated robbery, and aggravated assault in case number 2013-CR-635. A jury trial began in case number 2013-CR-630. Following the State's proof at trial, Petitioner entered guilty pleas to two counts of aggravated robbery, one under each case number, and the remaining counts were dismissed. The trial court ordered Petitioner to serve two twelve-year concurrent sentences.

Petitioner filed a *pro se* petition for post-conviction relief, in which he asserted that his trial counsel was ineffective and his guilty pleas were unknowingly and involuntarily entered. After appointment of counsel, Petitioner subsequently filed an amended petition for post-conviction relief, alleging as grounds for relief that: 1) his trial counsel failed to properly cross-examine the State's witnesses; 2) his trial counsel coerced him into entering guilty pleas by advising him that he would receive 30 years' incarceration if he did not accept the negotiated plea agreement; 3) his trial counsel failed to properly prepare for trial; 4) his trial counsel failed to reply to his letters and met with him on only two occasions prior to trial; 5) his trial counsel failed to "push the issue" of the State's lack of DNA evidence; 6) his trial counsel failed to raise the issue of self-defense of a third party; 7) his trial counsel failed to properly attack the credibility of the witnesses; 8) he was coerced by trial counsel to enter guilty pleas; 9) he was in a "trance" or in "shock" during the guilty plea hearing and did not understand the plea colloquy; 9) he was under the influence of marijuana when he entered his guilty pleas; and 10) he would not have entered guilty pleas if his trial counsel had effectively cross-examined the State's witnesses.

Notably, Petitioner did not assert in either his *pro se* petition or his amended petition that the trial court failed to adhere to all of the procedural requirements of Rule 11 of the Tennessee Rules of Criminal Procedure in accepting his guilty pleas. Petitioner asserts on appeal that the trial court failed to explain the maximum possible punishment and failed to inquire about the voluntariness of Petitioner's pleas. Petitioner also argues that the trial court failed to advise Petitioner that evidence of his prior convictions may be considered at sentencing. Petitioner did argue these grounds for relief at the post-conviction hearing without any objection by the State that they were not included in the post-conviction petition as amended.

In Tennessee, to ensure that guilty pleas are voluntarily, knowingly, and intelligently entered, Tennessee Rule of Criminal Procedure 11 sets forth, in part, the requirements for guilty pleas.

> (1) Advising and Questioning the Defendant. – Before accepting a guilty plea or nolo contendere plea, the court *shall* address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:
>
> (A) The nature of the charge to which the plea is offered;
> (B) the maximum possible penalty and any mandatory minimum penalty;
> (C) if the defendant is not represented by an attorney, the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and every other stage of the proceeding;
> (D) the right to plead not guilty or, having already so pleaded, to persist in that plea;
> (E) the right to a jury trial;
> (F) the right to confront and cross-examine adverse witnesses;
> (G) the right to be protected from compelled self-incrimination;
> (H) if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence; and
> (I) if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offense to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury[.]

Tenn. R. Crim. P. 11(b)(1) (emphasis added). Rule 11 also requires that the trial court determine that the plea is "voluntary and is not the result of force, threats, or promises," other than the promises in the plea agreement. Tenn. R. Crim. P. 11(b)(2). Rule 11 further requires the trial court to inquire "whether the defendant's willingness to plead guilty results from prior discussions between the district attorney general and the defendant or the defendant's attorney." *Id*. Moreover, the trial court must ensure that there is a factual basis for the plea. Tenn. R. Crim. P. 11(b)(3).

In addition to these enumerated Rule 11 requirements, Tennessee law requires a trial court to inform a defendant and ensure that he or she understands that different or additional punishment may result from his or her guilty plea due to the defendant's prior convictions or other factors which may be established after the entry of his plea, and that

- 3 -

the resulting conviction may be used to enhance punishment for subsequent convictions. *State v. Mackey*, 553 S.W.2d 337, 341 (Tenn. 1977); *State v. McClintock*, 732 S.W.2d 268, 273 (Tenn. 1987).

As noted, the State failed to object to these grounds at the post-conviction hearing or in its brief on appeal on the basis they were not included in the pleadings, thus we will review the merits. Petitioner also failed to include in either his *pro se* petition or his amended petition that he did not understand that his sentence would be served at 85 percent. The record contains a Petition for Waiver of Trial by Jury and Request for Acceptance of Plea of Guilty in each case. The plea documents contain a typewritten statement of the sentence of "ten (10) years to serve in the Tennessee Department of Corrections at 70 [percent]" for each offense, to be served concurrently with each other. The length of sentence and percentage of service are stricken through, and "twelve" and "85" are handwritten over them.

Petitioner raised this issue at the post-conviction hearing. The State also failed to object at the post-conviction hearing that this issue was waived. Therefore, it is also reviewable on the merits.

At the beginning of the plea acceptance hearing, trial counsel informed the trial court that Petitioner would be entering guilty pleas and "be sentenced to twelve years on each, concurrent, set at seventy percent service. . . ." The trial court asked what range Petitioner was being sentenced, and the prosecutor replied that it was Range II and stated, "[i]t's still at seventy percent." The trial court then asked Petitioner to "step up to the podium." The trial court read aloud Tennessee Code Annotated section 40-35-501(k)(1):

> [T]here shall be no release eligibility for a person committing aggravated robbery on or after July 1, 2010, until the person has served eighty-five percent of the sentence imposed by the court, less sentence earned and retained. However, no sentence reduction credit or any other provision of law shall operate to reduce below seventy percent, the percentage of the sentence imposed by the court, such person must serve before becoming release eligible.
>
> It is my understanding and [trial counsel], correct me if I am wrong, that he's got to serve at least seventy percent of twelve calendar years –
>
> . . . .
>
> – before he would be subject to even be considered?

The trial court addressed Petitioner and asked if he understood, and Petitioner replied, "Yeah." The trial court then asked Petitioner:

Court: Now, is this something you want to do or not do?

[Petitioner]: I agreed to it.

Court: That is not my question.

[Petitioner]: Yeah.

Court: Well, I am going to be going through your rights and if I don't think this is something you are really agreeing to, then I am not going to accept it . . . it is my job in this type of situation to determine whether you are voluntarily and intelligently giving up your rights upon entering these pleas. Do you understand that?

[Petitioner]: Yes, sir.

At the conclusion of the guilty plea hearing, the trial court stated:

Court: All right, I find [Petitioner] then guilty in Count three and sentence him to twelve years as a range two offender; that is, as we went over earlier, a minimum of seventy percent calendar days of twelve years.

. . . .

I find [Petitioner] then guilty of aggravated robbery in Count one and sentence him to twelve years as a range two offender, that is concurrent with the 635 case.

### Post-conviction hearing

At the post-conviction hearing, Petitioner testified that he was under the influence of marijuana at the time he entered his guilty pleas. He testified that he "smoked quite a bit of marijuana" in the Robertson County jail. He testified that he smoked "[p]robably about three or four grams" of marijuana the morning he entered his pleas. He testified that as a result, he was unable "to comprehend absolutely everything that was going on . . . ." He testified that the transcript of the guilty plea hearing shows that the trial judge did not ask or explain to him: the maximum punishment; whether his plea was voluntary;

whether any threats or promises were made to him; and whether he was under the influence of any drugs. Petitioner testified that there was also no discussion of his prior convictions.

Petitioner testified that trial counsel failed to properly cross-examine the State's witnesses to show that they were not credible. He testified, "as soon as the trial started, there was [sic] lies already taking place, and I feel like that needed to be proved." Petitioner disputed the victim's testimony that the victim met one of Petitioner's co-defendants on a dating website. Petitioner testified that trial counsel told him that he did not believe the issue "was going to make that big of a difference, whether or not we discussed that website topic." Petitioner testified, "there w[ere] lies all through [the victim's] testimony." Petitioner testified that the victim paid his co-defendant, Bailey, for sex, and trial counsel should have cross-examined her about that. Petitioner testified that there were inconsistencies in the victim's statement to police, and a proper cross-examination of the victim by trial counsel would have shown that he "may have been guilty of an assault, but that – the [victim's] statement showed that [Petitioner] never robbed him."

Petitioner testified that trial counsel cross-examined one of the State's witnesses about his prior felony conviction and the fact that his gun was stolen; however, trial counsel failed to cross-examine the witness about his statement to police that the gun was kept under his mattress and that police found the gun in the attic. Petitioner testified that another State's witness gave testimony at trial that was inconsistent with her prior statement. He testified, "she had a bunch of details that were different" and that she "was just changing things as she went." Petitioner testified that the witness initially told police that she did not know anything about a gun, and that she later told police where the gun was located.

Petitioner testified that trial counsel asked the detective in the case why no DNA analysis or fingerprint analysis was conducted on the weapon, but Petitioner felt that trial counsel "should have pressed the issue more."

Petitioner testified that he was his co-defendant Bailey's "significant other at the time." He went to the victim's hotel with her to protect her. He testified that "her plan was to go up there and get his money and leave." When Petitioner saw the victim following Bailey, Petitioner "got nervous for her safety," and he defended her.

Petitioner testified that he met with trial counsel on two occasions before the day of trial. Trial counsel advised him of the State's offer. Petitioner wrote letters to trial counsel, but he did not get a response. Petitioner testified that during his trial, he was "just constantly writing notes" to trial counsel. Petitioner testified, "[w]e didn't have

- 6 -

time or we didn't get an opportunity to actually prepare for this trial and sit down and discuss everything that was – that needed to be discussed." Petitioner testified that trial counsel told him that he had not been able to meet with him because he was working on several other cases.

Petitioner testified that all of the plea offers he received prior to trial had been for eight years to be served at 70 percent. After the trial began, he was offered a sentence of twelve years to be served at 70 percent. Petitioner testified that he did not understand that he would be serving his sentence at 85 percent until he read the transcript of the plea hearing. Petitioner felt that he was "tricked into taking a sentence at 85 percent, when the whole time [he was] thinking it's 12 [years] at 70 [percent]." Petitioner testified, "I didn't sign a twelve-year-sentence at 85 percent, with an opportunity to get 70 percent good time. That's not how I was made aware of the sentence." Petitioner testified that on the second day of trial, trial counsel advised him not to finish the trial. Trial counsel explained to him that he could "end up with 30 or 40 years." On cross-examination, Petitioner acknowledged that the State had filed a notice of sentencing that indicated a sentencing range of 12 to 20 years as a Range II offender based on Petitioner's prior conviction.

Trial counsel testified he became employed at the Public Defender's Office in Hickman County in 1989. He transferred to the 19th Judicial District Public Defender's Office in 1993. Trial counsel estimated that he had represented defendants in "a couple of hundred" trials. Trial counsel could not recall how many meetings he had with Petitioner. He testified that he discussed "the details of [Petitioner's] case" with Petitioner, including the State's discovery response. Trial counsel testified, "[t]he essential elements [of the case] were very straightforward." He acknowledged that the State filed a sentencing range notice. Trial counsel provided Petitioner with a copy of the plea agreement, which he testified, "clearly states . . . sentenced to 12 years in the Tennessee Department of Corrections at 85 percent . . . ." Trial counsel reviewed the plea agreement with Petitioner and explained that Petitioner would be eligible to use good behavior credits to be released after 70 percent. Trial counsel testified that he also advised Petitioner of the maximum potential sentence.

Trial counsel testified that the State's lack of DNA evidence "would have been an argument to make to the jury. We never got to the argument phase of [trial]." He testified that the name of the website on which the victim and co-defendant Bailey met each other "just didn't matter." Trial counsel testified that he did not raise the issue of third-party self-defense because "[y]ou don't get third-part[y] defense of a co-defendant in an aggravated robbery." He testified that in order to claim the defense, Petitioner and Bailey would have had to testify. Trial counsel understood that co-defendant Bailey

- 7 -

would have testified that Petitioner hit the victim with a gun and demanded his wallet. Trial counsel testified that "[t]he leading up [to those actions] is irrelevant."

Trial counsel testified that Petitioner asked him on the second day of trial, "Can we settle this?" Trial counsel spoke to the prosecutor, and relayed an offer of an effective twelve-year sentence to Petitioner. Trial counsel testified that Petitioner "was prepared to take that." Trial counsel did not observe any signs that Petitioner was under the influence of marijuana. Petitioner's "speech and manner seemed appropriate." Trial counsel testified that the plea agreement he presented to Petitioner said, "10 years at 70 percent." Trial counsel changed it to 12 years at 70 percent, "but we wrote 85 over the top of that." The change was made after Petitioner signed the document. Trial counsel testified that he did not "specifically recall" whether he discussed the change with Petitioner, but that he normally discussed those kinds of changes with his clients. Trial counsel testified that Petitioner initialed beside the change to the length of the sentence, but "[n]ot specifically by the [change to] the percentage, no." The documents reflect that the initials "TN" appear beside the handwritten "TWELVE (12)."

We note that the transcript of the post-conviction hearing is approximately 108 pages in length. The post-conviction court's written order denying relief, while summarizing the testimony of the two witnesses, only contains the following findings of fact:

> In this case the court finds that the trial counsel for the petitioner reviewed the facts and applicable law in each case with the petitioner, consulted with the petitioner on several occasions, and that the petitioner both considered and participated in trial strategy.

> Petitioner heard the proof of the state and was given the opportunity to consider whether to continue with trial or enter the plea agreement. A review of the record reflects that trial counsel did a thorough job of cross examination of the State's witnesses. Further, there is no evidence to support the petitioner's contention that he had used marijuana while incarcerated on the day prior to trial or that his ability to understand the proceedings w[as] impaired.

*Analysis*

When determining the merits of a post-conviction petition, the Post-Conviction Procedure Act requires the post-conviction court to make written findings of fact and conclusions of law. A trial court's final disposition of a petition for post-conviction relief "shall set forth in the order or a written memorandum of the case all grounds presented,

and shall state the findings of fact and conclusions of law with regard to ***each such ground***." T.C.A. § 40-30-111(b) (emphasis added). The use of the word "shall" clearly indicates the Tennessee General Assembly intended that the duty of the post-conviction court to make findings of fact is mandatory. *Donald Mays v. State*, No. W2003-02761-CCA-R3-PC, 2004 WL 2439255, at *6 (Tenn. Crim. App. Oct. 28, 2004). Not only do the post-conviction court's findings of fact facilitate appellate review but, in many cases, are necessary for such review. *Id.* Where the post-conviction court fails to make "a clear and detailed finding of fact," either orally or on the record, the appellate court is "at a complete loss to know the basis of the trial judge's decision and judgment; assignments of error and appellate review are seriously frustrated if not completely thwarted by lack of a definitive finding of fact by the trial judge." *Brown v. State*, 445 S.W.2d 669, 671 (Tenn. Crim. App. 1969).

In the case before us, the record is devoid of several findings of fact and conclusions of law critical to our review. These include: 1) whether trial counsel correctly advised Petitioner as to the sentence he would receive under the negotiated plea agreement; (2) whether Petitioner understood that his sentence would be served at 85 percent; 3) whether trial counsel adequately addressed any DNA issues at trial; 4) whether trial counsel responded to Petitioner's letters; 5) whether trial counsel pressured or coerced Petitioner into pleading guilty; 6) whether trial counsel was ineffective for failing to raise the issue of defense of a third party; 7) whether the trial court failed to adequately advise Petitioner of the maximum penalty or that evidence of his prior convictions may be considered before sentencing; 8) whether Petitioner initialed handwritten changes to the plea forms; and 9) whether Petitioner suffered prejudice as a result of any alleged errors at the guilty plea hearing or as a result of any deficient performance by trial counsel. We also note that the post-conviction court failed to make any explicit credibility determinations.

We take this opportunity to point out again that a mere recitation or summary of the testimony of the witnesses at a hearing is not a "finding of fact" as is required. Such a summary only sets forth the testimony, which is usually contradictory. A "finding of fact" is the post-conviction court's opportunity to fulfill its responsibility to sort through all the evidence and set forth what actually happened, as opposed to just each witness's version of what happened. *See Charles Bradford Stewart v. State*, No. M2015-02449-CCA-R3-PC, 2017 WL 2645651, at *14 (Tenn. Crim. App. June 20, 2017), *perm. app. denied* (Tenn. Oct. 4, 2017).

Without sufficient factual findings and conclusions of law, we are unable to properly address the merits of Petitioner's claims.

CONCLUSION

Accordingly, we reverse the judgment of the post-conviction court and remand for further proceedings consistent with this opinion. After an order is entered in compliance with the requirements of the post-conviction statutes and this opinion, the losing party shall be entitled to initiate an appeal in accordance with the Tennessee Rules of Appellate Procedure.

_____
THOMAS T. WOODALL, PRESIDING JUDGE